KATHRYN J. FRITZ (CSB No. 148200)
kfritz@fenwick.com
TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MARY M. GRIFFIN (CSB No. 324073)
mgriffin@fenwick.com
NICHOLAS A. SANTOS (CSB No. 335767)
nsantos@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   415.875.2300
Facsimile:   415.281.1350

Attorneys for Defendant
NEOCORTEXT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KYLAND YOUNG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEOCORTEXT, INC.,<br><br>Defendant. | Case No.: 2:23-cv-02496-WLH(PVCx)<br><br>**DEFENDANT NEOCORTEXT, INC.'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S CLAIM PURSUANT TO CAL. CIV. PROC. CODE § 425.16**<br><br>Date:      July 14, 2023<br>Time:      1:30 p.m.<br>Dept:      Courtroom 9B<br>Judge:     Hon. Wesley L. Hsu<br>Trial Date: None |

FENWICK & WEST LLP
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION TO STRIKE

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on July 14, 2023, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9B of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant NeoCortext, Inc., will, and hereby does, move this Court to strike Plaintiff Kyland Young's right of publicity claim pursuant to Cal. Civ. Proc. Code § 425.16, and award NeoCortext its fees and costs under Cal. Civ. Proc. Code § 425.16(c) on the grounds that:

(1) Plaintiff's claim arises from protected activity; and

(2) Plaintiff cannot demonstrate a probability of prevailing on his right of publicity claim.

Defendant's Motion is made on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers that are of record in this case, and on such other and further evidence as may be offered at the hearing.

This Notice of Motion is made following the conference of counsel for Defendants and Plaintiff under L.R. 7-3, which took place on May 24, 2023, where the parties thoroughly discussed the substance and potential resolution of the filed motion by videoconference.  The parties were unable to reach a resolution, and Plaintiff opposes the Motion.


Dated:  May 31, 2023                    FENWICK & WEST LLP

                                        By:/s/ *Tyler G. Newby*
                                        Tyler G. Newby

                                        Attorneys for Defendant
                                        NEOCORTEXT, INC.

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................. 1

II.  BACKGROUND AND FACTS ALLEGED ......................................... 3

III. LEGAL STANDARD ........................................................................ 4

IV.  ARGUMENT ..................................................................................... 5

    A.   Plaintiff's Claim Arises from Protected Activity. ..................... 5

        1.   The display of images of celebrities and other public figures in Reface are statements made in a public forum in connection with issues of public interest. ................... 5

            a.   Plaintiff's claim arises from conduct in a public forum. ..................................................... 5

            b.   Plaintiff's claim concerns an issue of public interest. ..................................................... 6

        2.   Reface involves rights of free speech in connection with a public issue or an issue of public interest. ................... 7

    B.   Plaintiff Cannot Demonstrate a Probability of Prevailing on His Right of Publicity Claim. ...................................................... 8

        1.   The Copyright Act Preempts Plaintiff's Claim. ........... 8

            a.   The subject matter of Plaintiff's right of publicity claim falls within the subject matter of copyright ........... 9

            b.   Plaintiff asserts rights that are equivalent to rights within the general scope of copyright. ......................... 10

        2.   Plaintiff's Right of Publicity Claim is Also Barred by the First Amendment. ........................................................ 14

        3.   Plaintiff Fails to Plead a Prima Facie Violation of His Right of Publicity. ................................................... 16

V.   CONCLUSION ............................................................................... 17

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006) ................................................................. 5

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................ 16

*CBS Broad. Inc. v. Am. Broad. Cos., et al.,*
    C.D. Cal. Case No. 12-CV-04073-GAF-JEMx.................................. 9

*City of Colton v. Singletary,*
    206 Cal. App. 4th 751 (2012) .................................................... 4

*CoreCivic, Inc. v. Candide Grp., LLC,*
    46 F.4th 1136 (9th Cir. 2022) .................................................... 1

*Creative Photographers, Inc. v. Brook Collection, LLC,*
    No. 2:20-cv-09261-RGK-E, 2021 WL 3568243 (C.D. Cal July 7, 2021) ......... 14

*Downing v. Abercrombie & Fitch,*
    265 F.3d 994 (9th Cir. 2001) ................................................. 12, 13

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.,*
    742 F.3d 414 (9th Cir. 2014) ..................................................... 5

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2009) ..................................................... 6

*Hupp v. Freedom Commc'ns, Inc.,*
    221 Cal. App. 4th 398 (2013) .................................................... 5

*Jackson v. Mayweather,*
    10 Cal. App. 5th 1240 (2017) .................................................... 5

*Kirby v. Sega of Am., Inc.,*
    144 Cal. App. 4th 47 (2006) ................................................. 14, 15

*Laws v. Sony Music Ent., Inc.,*
    448 F.3d 1134 (9th Cir. 2006) ............................................... 10, 11

*Maloney v. T3Media, Inc.,*
    853 F.3d 1004 (9th Cir. 2017) ............................................*passim*

*Maloney v. T3Media, Inc.,*
    94 F. Supp. 3d 1128 (C.D. Cal. 2015) ........................................... 6

*Metabolife Int'l, Inc. v. Wornick,*
    264 F.3d 832 (9th Cir. 2001) ..................................................... 4

*Mindys Cosms., Inc. v. Dakar,*
    611 F.3d 590 (9th Cir. 2010) ..................................................... 4

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ........................................................... 4, 8

*Playboy Enters., Inc. v. Terri Welles, Inc.*,
   78 F.Supp.2d 1066 (S.D. Cal. 1999) ................................................ 14

*Seeling v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798 (2002) ............................................................ 7

*Stewart v. Rolling Stone LLC*,
   181 Cal. App. 4th 664 (2010) .......................................................... 6

*Tamkin v. CBS Broad., Inc.*,
   193 Cal. App. 4th 133 (2011) .......................................................... 7

*Van Buskirk v. Cable News Network, Inc.*,
   284 F.2d 977 (9th Cir. 2002) ........................................................... 9

*Varian Med. Sys., Inc. v. Delfino*,
   35 Cal. 4th 180 (2005) .................................................................... 4

*White v. City of Sparks*,
   500 F.3d 953 (9th Cir. 2007) ....................................................... 7, 15

*Winter v. DC Comics*,
   30 Cal. 4th 881 (2003) ....................................................... 14, 15, 16

**STATUTES AND RULES**

17 U.S.C. § 102 .................................................................................. 1, 9

17 U.S.C. § 103 ..................................................................................... 8

17 U.S.C. § 106 ............................................................................ 1, 8, 10

17 U.S.C. § 301 ................................................................................... 2, 8

Cal. Civ. Code § 3344 .................................................................. 3, 11, 16

Cal. Civ. Proc. Code § 425.16 ......................................................... *passim*

Copyright Act ................................................................................ *passim*

Federal Rules of Civil Procedure 12(b)(6) ......................................... 4, 9

Federal Rules of Evidence 201(b) ................................................... 9, 10

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I.    INTRODUCTION

Plaintiff's lawsuit is a strategic lawsuit against public participation ("SLAPP") aimed not at protecting his ability to sell his image and likeness, but at gagging a novel application that enables users to engage in creative activities that are protected by the First Amendment.  Defendant NeoCortext's Reface app allows end users to create new content by replacing a face in a photo or short video clip with a different face, such as their own.  The source photos and video clips may involve clips or stills from movies or, as in the case of Plaintiff, television shows.   Using artificial intelligence, Reface lets users transform these images to create humorous and sometimes absurd new works for personal use.  Complaint ("Compl.") ¶¶ 2, 4, 19, 21.  This is exactly the type of creative activity that the First Amendment protects and that the right of publicity does not.

California's anti-SLAPP statute is a special procedural vehicle to dispose of meritless lawsuits like this one that burden a defendant's First Amendment rights. Cal. Civ. Proc. Code § 425.16; *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1143 (9th Cir. 2022).  Plaintiff's sole claim, brought under California's statutory right of publicity, arises from "protected activity" as defined under the anti-SLAPP statute. Defendant's offering of an entertainment application that allows users to modify photos or video clips of public figures and create new content is conduct in a public forum both on matters of public interest and in furtherance of Defendant's and its users' free speech rights.  Cal. Civ. Proc. Code §§ 425.16(e)(3), (e)(4).  Additionally, Plaintiff cannot show a probability of prevailing on his claim as a matter of law. Plaintiff's claim fails for at least three reasons, as laid out in NeoCortext's concurrently filed motion to dismiss.

*First*, Section 301 of the Copyright Act preempts Plaintiff's claim.  Section 301 bars any state-law claim that (1) "come[s] within the subject matter of copyright as specified by [17 U.S.C. § 102]" and (2) asserts rights "equivalent to any of the exclusive rights within the general scope of copyright as specified by [17 U.S.C. §

FENWICK & WEST LLP
ATTORNEYS AT LAW

106].'' 17 U.S.C. § 301(a).  Plaintiff's claim is plainly within the subject matter of copyright because Plaintiff alleges that his likeness has been captured in copyrighted photos and video stills.  Compl. ¶¶ 2, 22.  And Plaintiff's right of publicity claim is equivalent to the rights "within the general scope of copyright" because the claim seeks to control the creation of derivative works from copyrighted photographs and video clips in which his image appears—a right granted exclusively to copyright holders.  At bottom, Plaintiff brings a copyright infringement claim that he likely has no legal right to bring under the guise of a right of publicity claim.

*Second*, Plaintiff's right of publicity claim is barred by the First Amendment under California's transformative use test, which balances a celebrity's right of publicity with First Amendment rights.  Here, Plaintiff's Complaint alleges that the Reface app provides users with the ability to create new images or videos that embody the user's creativity and aesthetic expression.  Compl. ¶¶ 2, 4, 19, 21.  The Complaint also alleges that the new work includes distinctive features that are absent from the original photographs.  *Id.* ¶¶ 1-2, 21.  Because these add expressive content to the original photograph of Plaintiff, they are sufficiently transformative to be entitled to First Amendment protection.

*Third*, Plaintiff fails to plead a prima facie violation of his statutory right of publicity.  California's statutory right of publicity claim requires Plaintiff to allege that Defendant "knowingly use[d] [his] name, voice, signature, photograph, or likeness" for advertising purposes.  The Complaint does not allege a knowing use of any such attribute.  Nor does the Complaint sufficiently allege that NeoCortext's conduct qualifies as advertising.

Accordingly, NeoCortext respectfully requests, pursuant to Cal. Civ. Proc. Code § 425.16, that the Court strike Plaintiff's right of publicity claim and order Plaintiff to pay Defendant's attorneys' fees it incurred in bringing this motion.

FENWICK & WEST LLP
ATTORNEYS AT LAW

## II.      BACKGROUND AND FACTS ALLEGED

Defendant is the developer of the Reface app, which users may download from the Google Play Store and the Apple App Store.  Compl. ¶ 6.  Defendant offers both a free version of Reface as wells as a paid version.  *Id.* ¶ 14.  Both versions allow users to access a catalogue of images and short video GIFs of various "actors, musicians, athletes, celebrities, and/or other well-known individuals, from third party sources, including "mybestgif.com, https://tenor.com/, Google Video, [or] Bing Video."  *Id.* ¶ 15.  Reface users can create new visual works and digital content by uploading pictures and images from their smartphone and swapping faces in uploaded photos and GIFs in the catalogue.  *Id*. ¶ 2.  Users can share the images with others for their reactions to "freak out friends."  *Id.* ¶ 21.  The newly created images have both creative and aesthetic value.  *Id.* ¶¶ 4, 21.  Aside from the expressive value and being able to "'Become Anyone You Wished to Be'," *id.* ¶ 3, the new images users create are also distinctive from the original photos.  When Reface users create an image using the free version, the watermark "made with reface app" appears on the new image with the Reface logo.  *Id.* ¶ 2.

On April 3, 2023, Plaintiff Kyland Young, a "cast member of several CBS shows" sued NeoCortext for violation of his statutory right of publicity under Cal. Civ. Code § 3344.  *Id.* ¶ 5.  Plaintiff alleges that the watermarks that appear on the images created with the free version, which he describes as "teasers" are commercial advertising which have the purpose of inducing users to sign up for the paid version to remove the watermarks.  *Id.* at 1, ¶ 2.  Plaintiff does not, and cannot, allege that the free version is a limited-time promotion; users may continue using the free version if they do not want the added features of the paid PRO version.  Plaintiff also alleges that the watermarked face-swapped photos and GIFs "serve as free advertising to attract new downloads of the Reface app."  *Id.* at ¶ 21.

1    The thrust of Plaintiff's Complaint is that Defendant's social entertainment app
2    allows users to use photos and videos of celebrities and other public figures to create
3    new, creative works.

4    ## III.    LEGAL STANDARD

5    In 1992, California enacted its anti-SLAPP statute to deter lawsuits that would
6    "chill the valid exercise of the constitutional right [] of freedom of speech." *Varian*
7    *Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005).   The anti-SLAPP statute
8    allows defendants to file a "special motion to strike" claims "aimed at chilling
9    expression through costly, time-consuming litigation" in their infancy.   Cal. Civ.
10   Proc. Code § 425.16(b)(1); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839-840
11   (9th Cir. 2001).

12   "A court considering a motion to strike under the anti-SLAPP statute must
13   engage in a two-part inquiry." *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 595 (9th
14   Cir. 2010).   First, the Court must determine whether the defendant has made "a prima
15   facie showing that the plaintiff's suit 'arises from an act in furtherance of the
16   defendant's rights of petition or free speech.'" *Id.* (quoting *Vess v. Ciba–Geigy Corp.*
17   *USA*, 317 F.3d 1097, 1110 (9th Cir. 2003)).   Courts often frame the resulting legal
18   inquiry as whether the claim would burden "protected activity." *City of Colton v.*
19   *Singletary*, 206 Cal. App. 4th 751, 766 (2012).   If the defendant makes the required
20   showing, the plaintiff must then "demonstrate a probability of prevailing on the
21   challenged claims." *Mindys Cosms.*, 611 F.3d at 595 (quoting *Vess*, 317 F.3d at 1110).
22   Where the defendant brings an anti-SLAPP motion on the pleadings, as this motion
23   does, the analysis of the second part is identical to the Rule 12(b)(6) standard of
24   review. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d
25   828, 832 (9th Cir. 2018).

26

27

28

Fenwick & West LLP
Attorneys at Law

## IV.    ARGUMENT

### A.    Plaintiff's Claim Arises from Protected Activity.

Plaintiff's single claim is subject to an anti-SLAPP motion because the use of Plaintiff's image in Reface is "in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(e).  The statute enumerates four categories of protected activity: (i) written or oral statements in a legislative, judicial, or executive proceeding; (ii) written oral statements in connection with an issue under consideration or review by a legislative, executive, or judicial body; (iii) any written or oral statements made in a public forum in connection with an issue of public interest; and (iv) other conduct in furtherance of the exercise of the right of petition or free speech in connection with a public issue or an issue of public interest.  Cal. Civ. Proc. Code § 425.16(e).  Because the legislature declared that the statute "shall be construed broadly" (Cal. Civ. Proc. Code § 425.16(a)), courts "must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis." *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014).

### 1.    The display of images of celebrities and other public figures in Reface are statements made in a public forum in connection with issues of public interest.

#### a.    Plaintiff's claim arises from conduct in a public forum.

Websites and entertainment applications like Reface are "public forums for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006); *see also Hupp v. Freedom Commc'ns, Inc.*, 221 Cal. App. 4th 398, 404 (2013) (same); *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1252 (2017), *as modified* (Apr. 19, 2017) (finding that postings on social media apps Facebook and Instagram were made in a public forum).  Even websites or apps where the defendant publishes photographs and "controls the content of the [] website with no ability for members of the public to express their viewpoint" still qualify as a public forum because they

FENWICK & WEST LLP
ATTORNEYS AT LAW

are part of the internet at-large.  *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004, 1009 n.3 (9th Cir. 2017) (analyzing California's anti-SLAPP statute and explaining that "claims [that] stem from the publication and distribution of expressive photographs over the Internet" fall under both Cal. Civ. Proc. Code sections 425.16(e)(3) and (e)(4)).

Because Reface allows users to select, modify, and distribute photos and GIFs, it is a "public forum."

### b.    Plaintiff's claim concerns an issue of public interest.

Plaintiff's claim arises out of the Reface users' ability to modify images of celebrities and public figures, including for entertainment and parody purposes, which are issues of public interest.  While California's anti-SLAPP statute does not define "issue of public interest," courts have given way to the statute's explicit command that it "shall be construed broadly" and have found that "an issue of public interest" means an issue: "(1) [] 'concerning a person or entity in the public eye'; (2) 'conduct that could directly affect a large number of people beyond the direct participants'; or (3) 'a topic of widespread, public interest.'"  *Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2009) (*citing Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps.*, 105 Cal. App. 4th 913, 130 (2003) (holding that the individuals were not matters of public interest because they had "received no public attention or media coverage")).

Here, the Complaint alleges that the Reface app contains the images of "thousands of [] actors, musicians, athletes, celebrities, and other well-known individuals." Compl. ¶¶ 1,13.  The Complaint further alleges that Plaintiff himself is in the public eye.  *See id*. ¶ 5 ("Plaintiff . . . is a cast member of several CBS shows. He was a finalist in season 23 of Big Brother and Starred in the Challenge: USA.").  Thus, by Plaintiff's own admission, he is in the public eye and therefore of "public interest."  *See Stewart v. Rolling Stone LLC*, 181 Cal. App. 4th 664, 677-78 (2010) (stating that "public interest which attaches to people who, by their accomplishments,

FENWICK & WEST LLP
ATTORNEYS AT LAW

mode of living, professional standing or calling," call the public's attention to their activities); *Seeling v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 808 (2002) ("By having chosen to participate as a contestant in [a reality tv show], plaintiff voluntarily subjected herself to [commentary] by the public.").  Indeed, users could only "wish to be" (Compl. ¶ 3) someone well-known and in the public eye.  Accordingly, Plaintiff's claim concerns an issue of public interest.

### 2.   Reface involves rights of free speech in connection with a public issue or an issue of public interest.

Giving users a platform to create digital content and new visual works, as Reface does, furthers free speech.  "An act is in furtherance of the right of free speech if the act helps to advance that right or assists in the exercise of that right." *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133, 143 (2011) (explaining that "acts [that] helped to advance or assist in the create[ing], casting, and broadcasting of an episode of a popular television show" qualified for protection under the anti-SLAPP statute). The Ninth Circuit has explained that visual works "always communicate some idea or concept to those who view [them], and as such are entitled to full First Amendment protection." *White v. City of Sparks*, 500 F.3d 953, 955-56 (9th Cir. 2007).

Reface allows users to create new expressive works from a catalogue of photos and GIFs by using "an artificial intelligence algorithm to allow users to swap faces with actors, musicians, athletes, celebrities, and/or other well-known individuals" to "generate a new watermarked image or video."  Compl. ¶¶ 1-2, 19.  The Complaint also recognizes that the newly generated images embody both the user's creativity and aesthetic expression. *Id.* ¶¶ 4, 21.  Like other visual content, the newly generated photos and videos are entitled to First Amendment protection, and Defendant's operation of the application that enables the creation of this new content furthers users' right to free speech.

In sum, Plaintiff's claims arise out of Defendant's First Amendment protected activity.

**B.     Plaintiff Cannot Demonstrate a Probability of Prevailing on His Right of Publicity Claim.**

Because Plaintiff's claim arises out of protected activities, the burden shifts to him to show a probability of prevailing on his claim.  *See Planned Parenthood*, 890 F.3d at 832-33 (*citing* Cal. Civ. Proc. Code § 425.16(b)(1)) (the second step of anti-SLAPP requires plaintiffs to show that the complaint is legally sufficient).  Plaintiff cannot meet this burden for three independent reasons: (1) Plaintiff's claim is preempted by the Copyright Act; (2) the First Amendment bars Plaintiff's claim; and (3) Plaintiff fails to plead to a prima facie violation of his right of publicity.

**1.     The Copyright Act Preempts Plaintiff's Claim.**

"The Copyright Act affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (*citing* 17 U.S. C.  § 106).  Section 301 of the Copyright Act preempts state-law claims that "come within the subject matter of copyright" and assert rights that are "equivalent" to the exclusive rights provided to copyright owners under the Copyright Act.  17 U.S. C. § 301(a).

The Ninth Circuit applies a two-part test to determine whether the Copyright Act preempts a state-law claim.  *Maloney*, 853 F.3d at 1010.  First, the Court must determine whether the subject matter of the state-law claim falls within the subject matter of copyright as described in 17 U.S.C. §§102-103.  *Id.*  If the first requirement is met, the Court then considers "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1

2

### a. The subject matter of Plaintiff's right of publicity claim falls within the subject matter of copyright.

3    Plaintiff's claim is within the subject matter of copyright.  The Copyright Act

4  defines the "subject matter of copyright" to include "original works of authorship

5  fixed in any tangible medium of expression . . . from which they can be perceived,

6  reproduced, or otherwise communicated, either directly or with the aid of a machine

7  or device." 17 U.S.C. § 102(a).  "Works of authorship" include "pictorial or graphic"

8  works. *Id.* § 102(a)(5).  In *Maloney*, under step one, the Ninth Circuit explained that

9  state law right of publicity claims are preempted by the Copyright Act "when a

10 likeness has been captured in a copyrighted artistic visual work and the work itself is

11 being distributed for personal use." *Id.* at 1011.  But a right of publicity claim is not

12 preempted when the claim concerns the use of one's name or likeness in advertising

13 or the sale of merchandise. *Id.*

14    The core of Plaintiff's right of publicity claim is that Defendant used

15 photographs and videos of him from the CBS television program, Big Brother, in the

16 free version of its Reface app.  *See* Compl. ¶ 2 ("[t]he free version grants the Free

17 User access to the Reface library of movie and show clips and images."); *id.* ¶ 22

18 (explaining that the pre-set catalogue "contains images and videos often depicting

19 individuals' physical bodies in the role for which they are famous"); *id* ("[i]n Mr.

20 Young's case, the Reface application allows users to swap their face on his body from

21 scenes on CBS's big brother).  The photo stills, video clips, and the Big Brother

22 program are clearly within the subject matter of copyright, and Plaintiff has not

23 alleged that he is the copyright holder.  Indeed, CBS, as the exclusive licensee of the

24 Big Brother program, has previously sued another network for allegedly infringing

25 copyrights in Big Brother.  *See, e.g.*, *CBS Broad. Inc. v. Am. Broad. Cos., et al.*, C.D.

26 Cal. Case No. 12-CV-04073-GAF-JEMx, Complaint (Dkt. 1) at ¶¶ 74-81.[1]  The use

27 ─────────────
[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court

28 properly considers facts for which judicial notice may be  taken. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.2d 977, 908 (9th Cir. 2002).  Federal Rules of

FENWICK & WEST LLP
ATTORNEYS AT LAW

of photographs of Plaintiff falls within the subject matter of copyright.  *See Maloney*, 853 F.3d at 1011.

### b.    Plaintiff asserts rights that are equivalent to rights within the general scope of copyright.

Plaintiff's right of publicity claim asserts rights that are equivalent to those protected by copyright law.  Section 106 of the Copyright Act affords copyright owners "exclusive rights" to display, perform, reproduce, distribute or create derivative copies of their copyrighted works.  17 U.S.C. § 106.  To survive preemption, the asserted state-law right must protect rights that are "qualitatively different from" the rights protected by copyright law.  *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006) (citation omitted).  For that reason, non-preempted claims must have an "extra element" that is sufficient to "transform the nature of the action." *Id.* at 1144.  "But where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity right claim is little more than a thinly disguised copyright claim" that is preempted. *Maloney*, 853 F.3d at 1016.

Here, Plaintiff does not identify any use of his name, voice, photograph, or likeness independent of Defendant's use of the copyrighted photos or videos in which Plaintiff is depicted.  Rather, Plaintiff claims that Defendant violated his statutory right of publicity by displaying the photographs in which he appears (Compl. ¶¶ 18, 22); displaying those photographs in its online "Pre-sets" database of photographs (*id.* ¶¶ 24, 39); allowing end users to "generate [] a new watermarked image or video where the individual depicted in the Pre-sets catalogue has his or her face swapped"

Evidence 201(b) authorizes courts to take judicial notice of facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The existence of CBS's assertion of an exclusive license in Big Brother in a copyright infringement case is "not subject to reasonable dispute" because it is both generally known within the jurisdiction and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, as it is available on this Court's ECF system.

FENWICK & WEST LLP
ATTORNEYS AT LAW

with the face that was uploaded by the free user (*id.* ¶19); which "commercially exploit [Plaintiff] and other class members' identities to promote paid subscriptions to the Reface application," (*id.* ¶ 21).  Thus, Plaintiff's claim presumes that Reface displays an expressive work—his photo or clips from Big Brother—and allows users to create and distribute derivative works from that work without his permission, both of which are exclusive rights under the copyright law.  Plaintiff's claim alleges nothing more and, therefore, lacks the "extra element" required by law and thus is qualitatively no different from a copyright claim.  *See Laws*, 448 F.3d at 1144 ("[t]he mere presence of an additional element ('commercial use') in section 3344 is not enough to qualitatively distinguish [a] right of publicity claim from a claim in copyright.").  Therefore, Defendant's use of Plaintiff's image is entirely subsumed by the rights protected by copyright law and granted to copyright holders, which Plaintiff is not.  *Id.*; *Maloney*, 853 F.3d at 1019.

Plaintiff's claim here does not differ materially from the claim in *Maloney*, which the Ninth Circuit held was preempted by Copyright Act.  In *Maloney*, college athletes sued the operator of a website that displayed and sold photos of plaintiffs and other athletes that defendant had licensed from the NCAA.  *Id.* at 1011-12.  The Ninth Circuit rejected plaintiffs' argument that because defendant made a commercial use of their images, their right of publicity claim survived preemption.  *Id.* at 1138-40.  Because the defendant simply displayed copyrighted photos and sold those photos, the publicity claims overlapped completely with the rights of the copyright owner.  *Id.*  Plaintiff's claim here is the same.  The essence of his claim is that Reface displays photos or video clips of him from CBS shows, and which users can view, make derivative works of and then distribute. Those rights are no different from those reserved by copyright owners and, therefore Plaintiff's right of publicity claim is preempted.

Plaintiff will likely argue that Defendant's addition of a watermark to the photos and videos users create when using the free version of Reface transform the

photos into "teaser" advertisements, which use is not preempted.  But the "teaser" terminology is a misnomer invented by the Plaintiff.  Reface's free version is a fully functional version of the app that is not a time or usage limited promotion, like a true teaser.  Like many software products with different feature levels, the PRO version offers features that are not available in the free version.  The fact that the PRO and free versions have different feature sets does not make the free version an advertisement for the PRO version.

The free version is no different from the PRO version in its core feature.  Both allow users to access photos and video clips from the "Pre-Sets" libraries.  Both allow users to create derivative works from those source materials.  The Complaint makes clear that Plaintiff's right of publicity claims arise out of the display and ability of free Reface users to modify photos and video clips of TV shows in which Plaintiff appeared.  *See* Compl. ¶ 22 ("[t]he free version grants the Free User access to the Reface library of movie and show clips and images."); *id.* ¶ 22 (describing how NeoCortext's pre-sets catalogue "contains images and videos often depicting individuals' physical bodies in the role for which they are famous"); *id.* ("In Mr. Young's case, the Reface applications allows users to swap their face on his body from scenes on CBS's big brother.").  While the Complaint incants the words "advertising" and "commercial," the conduct that forms the basis of his complaint is equivalent to copyright rights.  Plaintiff nowhere alleges that Defendant uses his face on merchandise that it sells or in advertisements that it uses to promote its products.

At most, the Complaint alleges Defendant automatically imposes a digital watermark on the *modified* photos or GIFs that do *not* contain his image that free version users create.  But simply placing a watermark on an item is not advertising.  Where courts have found a use of an image or likeness to be for an advertising or commercial purpose that avoids copyright preemption, the defendant used the image or likeness in advertising that was separate from the copyrighted work itself.  *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1000 (9th Cir. 2001).  In *Downing*

FENWICK & WEST LLP
ATTORNEYS AT LAW

the Ninth Circuit held that the Copyright Act did not preempt Plaintiff's right of publicity claim against a clothing retailer that used Plaintiff's name and photos of him in its catalogue which was the company's "largest advertising vehicle." *Id.* at 999, 1000. The defendant also created t-shirts, exactly like those worn by the plaintiff in the photographs and advertised them for sale in the catalogue. *Id.* The Court held that the use of Plaintiff's name and likeness in its primary advertising channel was not preempted. *Id.* at 1005.

In *Maloney,* the Ninth Circuit clarified that "*Downing* did not mint a categorical rule that publicity-right claims 'relating to a likeness in a photograph' are not subject to preemption." *Maloney*, 853 F.3d at 1012. Rather, the preemption analysis turns on how the likeness is used. *Id.* In *Maloney*, as here, the plaintiff's right of publicity claims were based on the alleged display, distribution, and sale of the copyrighted work itself in which the plaintiff's image appeared. *Id.* The alleged commercial use was simply the display and sale of the copyrighted work—both of which were rights exclusively granted under copyright, and the *Maloney* plaintiff's claim was thus, which was preempted. In *Downing*, on the other hand, the defendant used photos of a famous surfer to in advertisements for its surf-themed apparel. Because the defendant was not selling the photos of the Plaintiff, but was using his persona to advertise clothes—something separate from the original works—the use was commercial and advertising. The claim therefore had an additional element and was not subsumed into copyright. *Id.* at 1013 (quotations omitted).

Unlike *Downing*, here, Defendant simply places its watermark on the user's newly generated photos as a way to distinguish the new work from the original work. Defendant does not, nor does the Complaint allege, sell products depicting photographs of Plaintiff. Indeed, watermarks serve as a common way to limit the utility of an object, not further it. For example, Getty Images uses a watermark on all of its photos, but that use does not operate as an advertisement. Common sense dictates that the watermark is used to convey limits on use of the image so that it

FENWICK & WEST LLP
ATTORNEYS AT LAW

*won't* be used commercially.  *See Creative Photographers, Inc. v. Brook Collection, LLC*, No. 2:20-cv-09261-RGK-E, 2021 WL 3568243, at * 1 (C.D. Cal July 7, 2021) ("Plaintiff placed a watermark on the center of the image, thereby protecting it with copyright management information."); *Playboy Enters., Inc. v. Terri Welles, Inc.*, 78 F.Supp.2d 1066, 1087-88 (S.D. Cal. 1999) (explaining the court's "befuddlement at the oxymoronic meaning" that a watermark, which "is usually located in the background and not the foreground of a page" could be so prominent as to constitute a commercial theme), *reversed on other grounds*, 279 F.3d 796, 804 (9th Cir. 2002)).

### 2. Plaintiff's Right of Publicity Claim is Also Barred by the First Amendment.

Plaintiff cannot prevail on his right of publicity claim for the independent reason that the claim violates the expressive rights of Defendant and its users that are guaranteed by the First Amendment.  The California Supreme Court has observed that the "right of publicity threatens two purposes of the First Amendment: (1) preserving an uninhibited marketplace of ideas; and (2) furthering the individual right of self-expression." *Winter v. DC Comics*, 30 Cal. 4th 881, 887 (2003).  "[B]ecause celebrities take on personal meanings to many individuals in the society, the creative appropriation of celebrity images can be an important avenue of individual expression." *Id.* (quoting *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 397 (2001)).

To balance celebrities' rights of publicity with the First Amendment's protections, California law applies the "transformative use" test, which asks "whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness or imitation." *Winter*, 30 Cal. 4th at 885 (2003) (quoting *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 391 (2001)).  "If distinctions exist, the First Amendment bars claims based on appropriation of the plaintiff's identity or likeness; if not, the claims are not barred." *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 61 (2006).  As part of this inquiry,

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    courts look to whether the defendant merely used the plaintiff's likeness as "one of

2    the 'raw materials'" from which a new, creative work is "synthesized" and is

3    therefore protected expression. *Id.* at 57-58.  In *Winter*, for example, the California

4    Supreme Court found that depictions of the plaintiff musicians in a comic book series

5    as cartoony, worm-like characters were transformative because they contained

6    "expressive content other than plaintiffs' mere likenesses." *Winter*, 30 Cal. 4th at

7    890.  In *Kirby*, the Court of Appeal similarly found that a video game character which

8    bore similarities to plaintiff (another singer), was transformative because the

9    character was a fanciful, Japanese anime style news reporter from outer space. *Kirby*,

10   144 Cal. App. 4th 59-61.

11        Here, as in *Winter* and *Kirby*, the Complaint language itself establishes that

12   Defendant's use in the Reface app of photos and GIFs containing Plaintiff's image is

13   distinct and thus transformative.  First, the First Amendment unambiguously protects

14   using software like Reface to create new visual works, especially where the new

15   image "communicate[s] some idea or concept" through a visual medium. *See White*,

16   500 F.3d at 956 (9th Cir. 2007) (explaining that "arts and entertainment constitute

17   protected forms of expression under the First Amendment").  The very purpose of

18   Reface is to transform a photo or video in which Plaintiff's (or others) image appears

19   into a new work in which Plaintiff's face does *not* appear.  Display of the original

20   work is a necessary pre-cursor to this transformative process.  The Complaint

21   acknowledges this transformative purpose, alleging that the app "uses an artificial

22   intelligence algorithm to allow users to swap faces with actors, musicians, athletes,

23   celebrities, and/or other well-known individuals."  Compl. ¶ 1.  The Complaint

24   further alleges that the newly generated photos or videos have "aesthetic value." *Id.*

25   ¶ 21.  Moreover, Reface users use the newly created images for in "creative ways"

26   like humor and surprise. *Id.* ¶ 4.  As *Winter* found, transformed depictions of a

27   celebrity "are no less protected because they provide humorous rather than serious

28

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  commentary." *Winter*, 30 Cal. 4th at 890.  Accordingly, the distinctions between the

2  original photos of Plaintiff and the Reface app's output makes the use transformative.

### 3.  Plaintiff Fails to Plead a Prima Facie Violation of His Right of Publicity.

5         Plaintiff fails to allege a prima facie violation of his publicity rights.  Under

6  California law, to establish a claim for violation of the statutory right of publicity,

7  Plaintiff must allege that Defendant "knowingly uses [his] name, voice, signature,

8  photograph, or likeness" for advertising purposes.   Cal. Civ. Code § 3344(a).

9  Plaintiff has not sufficiently alleged that Defendant "knowingly" used his, or anyone

10 else's, name, voice, photograph, or likeness for advertising purposes.   Rather,

11 Plaintiff merely alleges that Defendant created a "library of movie and show clips

12 and images ('Pre-sets catalogue')" compiled from online sources such as

13 "mybestgif.com, https://tenor.com/, Google Video, and Bing Video."  Compl. ¶¶ 2,

14 15.  Reface users could then use photos and GIFs from that catalogue as they wished,

15 and at no charge for the free version.   Nothing in the Complaint indicates that

16 Defendant knew Plaintiff's photos and GIFs containing Plaintiff's face were included

17 in the database.  The Complaint fails to even mention the words "knowingly,"

18 "knew," or any variation of the words outside of listing the legal standard for pleading

19 a violation of the statutory right of publicity.  Thus, rather than plead the necessary

20 facts, Plaintiff simply recites the elements of the statute.  This is not enough to state

21 a claim.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (mere legal

22 conclusions or recitation of elements of a claim, even if dressed as factual allegations,

23 cannot state a claim).

24        In the same vein, Plaintiff fails to sufficiently plead that Defendant uses his

25 name in the Reface app.  The Complaint lacks factual averments regarding the use of

26 Plaintiff's name.  Plaintiff does not attempt to explain how his name was used in the

27 Reface app.  Nor does he allege any basis to allow the Court to deduce that one's

28 name would be used, or necessary, for an application based merely on photographs.

FENWICK & WEST LLP
ATTORNEYS AT LAW

While the Complaint alleges that "[s]everal animated images of Mr. Young can be found using the Reface application's search bar," Compl. ¶ 18, the Complaint does not allege that users can search for Plaintiff by name, or whether video clips in which he appears are returned by a search for "Big Brother."  Even if users could search for Plaintiff by name, the Complaint fails to allege that the search is of data maintained by Plaintiff instead of the third party sources of photos and video clips like Tenor and Google video.  *See* Compl. ¶ 15.

Finally, as explained above, *supra* section IV.B.1.b, the Complaint does not sufficiently allege that the NeoCortext's use constitutes advertising.

## V.    CONCLUSION

For all these reasons, Defendant NeoCortext respectfully requests that the Court grant its anti-SLAPP motion under Cal. Civ. Proc. Code § 425.16, strike Plaintiff's right of publicity claim, and award NeoCortext its fees and costs under Cal. Civ. Proc. Code § 425.16(c).

Dated:  May 31, 2023                          FENWICK & WEST LLP

                                              By: */s/Tyler G. Newby*
                                              Tyler G. Newby

                                              Attorneys for Defendant
                                              NEOCORTEXT, INC.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff NeoCortext, Inc., certifies that this brief contains 5,624 words, which complies with the word limited of L.R. 11-6.1.

Dated: May 31, 2023                    FENWICK & WEST LLP

By: /s/ *Tyler G. Newby*
     Tyler G. Newby

Attorneys for Defendant
NEOCORTEXT, INC.