KATHRYN J. FRITZ (CSB No. 148200)
kfritz@fenwick.com
TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MARY M. GRIFFIN (CSB No. 324073)
mgriffin@fenwick.com
NICHOLAS A. SANTOS (CSB No. 335767)
nsantos@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:   415.875.2300
Facsimile:    415.281.1350

Attorneys for Defendant
NEOCORTEXT, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KYLAND YOUNG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEOCORTEXT, INC.,<br><br>Defendant. | Case No.: 2:23-cv-02496-WLH(PVCx)<br><br>**DEFENDANT NEOCORTEXT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Date:         July 14, 2023<br>Time:        1:30 p.m.<br>Dept:         Courtroom 9B<br>Judge:       Hon. Wesley L. Hsu<br>Trial Date: None |

# NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on July 14, 2023, at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 9B of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant NeoCortext, Inc. will, and hereby does, move this Court to dismiss Plaintiff Kyland Young's Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) on the grounds that:

(1) Plaintiff's right of publicity claim is preempted by the Copyright Act;

(2) Plaintiff's right of publicity claim is barred by the First Amendment; and

(3) Plaintiff fails to plead a prima facie violation of his right of publicity.

Defendant's Motion is made on this Notice, the accompanying Memorandum of Points and Authorities, all pleadings and papers that are of record in this case, and on such other and further evidence as may be offered at the hearing.

This Notice of Motion is made following the conference of counsel for Defendants and Plaintiff under L.R. 7-3, which took place on May 24, 2023, where the parties thoroughly discussed the substance and potential resolution of the filed motion by videoconference. The parties were unable to reach a resolution, and Plaintiff opposes the Motion.

Dated: May 31, 2023

FENWICK & WEST LLP

By: /s/ *Tyler G. Newby*
Tyler G. Newby

Attorneys for Defendant
NEOCORTEXT, INC.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTS ALLEGED ............................................................................................. 2

III. LEGAL STANDARD .......................................................................................... 3

IV. ARGUMENT ....................................................................................................... 3

    A. The Copyright Act Preempts Plaintiff's Claim. ....................................... 4

        1. The subject matter of Plaintiff's right of publicity claim falls within the subject matter of copyright. ............................... 4

        2. Plaintiff asserts rights that are equivalent to rights within the general scope of copyright. ........................................ 6

    B. Plaintiff's Right of Publicity Claim is Also Barred by the First Amendment. ............................................................................................ 10

    C. Plaintiff Fails to Plead a Prima Facie Violation of His Right of Publicity. ................................................................................................ 11

V. CONCLUSION .................................................................................................. 13

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**CASES**        **PAGE(S)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................... 3, 12

*CBS Broad. Inc. v. Am. Broad. Cos., et al.*,
  C.D. Cal. Case No. 12-CV-04073-GAF-JEMx .................................................... 5

*Conservation Force v. Salazar*,
  646 F.3d 1240 (9th Cir. 2011) ............................................................................. 3

*Creative Photographers, Inc. v. Brook Collection, LLC*,
  No. 2:20-cv-09261-RGK-E, 2021 WL 3568243 (C.D. Cal July 7, 2021) ........... 9

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ............................................................................ 8, 9

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2009) ............................................................................... 3

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................. 3

*Kirby v. Sega of Am., Inc.*,
  144 Cal. App. 4th 47 (2006) ......................................................................... 10, 11

*Laws v. Sony Music Ent., Inc.*,
  448 F.3d 1134 (9th Cir. 2006) .......................................................................... 6, 7

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ..................................................................... *passim*

*Playboy Enters., Inc. v. Terri Welles, Inc.*,
  78 F.Supp.2d 1066 (S.D. Cal. 1999) ................................................................... 9

*Van Buskirk v. Cable News Network, Inc.*,
  284 F.2d 977 (9th Cir. 2002) ............................................................................... 5

*White v. City of Sparks*,
  500 F.3d at 956 (9th Cir. 2007) ......................................................................... 11

*Winter v. DC Comics*,
  30 Cal. 4th 881 (2003) .................................................................................. 10, 11

**STATUTES AND RULES**

17 U.S.C. § 102 ..................................................................................................... 4, 5

17 U.S.C. § 103 ......................................................................................................... 4

FENWICK & WEST LLP
ATTORNEYS AT LAW

| | |
|---|---|
| 17 U.S.C. § 106 | 4, 6 |
| Cal. Civ. Code § 3344 | 3, 4, 7, 12 |
| Copyright Act | *passim* |
| Federal Rules of Civil Procedure 12(b)(6) | 3, 5 |
| Federal Rules of Evidence 201(b) | 5 |

## I. INTRODUCTION

Plaintiff brings a copyright infringement action masquerading as a right of publicity case. Plaintiff is a reality television personality who has appeared on two CBS shows. Through this case, he seeks to recoup windfall damages from NeoCortext, a Ukrainian startup company whose Reface app allows users to make humorous modifications to photos and video clips from TV programs, movies, and Internet memes by swapping their faces for the faces of people appearing in the scenes. A few of the video clips and photos that Reface users can modify in this way are scenes from television shows in which Plaintiff appeared that Defendant procured from other sources. As one of many performers in those shows, Plaintiff almost certainly does not own the copyrights in the shows or photo stills from them. Faced with that inconvenient fact, Plaintiff instead claims Defendant has used his likeness without his consent. But this path is well-trodden, and the result is always the same, as it must be here: Where a right of publicity claim is based entirely on display, reproduction, or modification of a copyrighted work, like an episode of a TV show, the Copyright Act preempts the claim.

Even if copyright did not preempt Plaintiff's claim, the First Amendment bars it. Actors, celebrities, musicians, athletes, and other well-known people often try to control the proliferation of their photographic images, videos, and likeliness through the use of right of publicity lawsuits. Plaintiff, while not quite at that status, seeks to quash the creative efforts of Reface users through this lawsuit. But because the uses of likenesses were purely to enable users to create their own unique, sometimes humorous and absurd expressions, the First Amendment protects the use.

Finally, Plaintiff's claim fails because he fails to plead the requisite facts to allege a plausible violation of his right of publicity. The Complaint does not allege that NeoCortext knowingly used Plaintiff's name, photographs, and likeness, or that his name was even used in the first instance. Nor does the Complaint sufficiently allege that NeoCortext's use of a watermark constitutes advertising.

For the reasons below, the Court should grant NeoCortext's Motion to Dismiss and dismiss Plaintiff's complaint in its entirety.

## II.    FACTS ALLEGED

Defendant NeoCortext is "the developer of the Reface app, which is available for download to smartphones through both the Google Play Store and the Apple App Store." Compl. ¶ 6. NeoCortext offers a free version of the app and a paid version. *Id.* ¶ 14. Both versions of the Reface app grant users access to a database of a pre-set catalogue. *Id.* The pre-set catalogue includes photos and videos of various "actors, musicians, athletes, celebrities, and/or other well-known individuals," *id.* ¶ 1, which were taken from either "mybestgif.com, https://tenor.com/, Google Video, [or] Bing Video." *Id.* ¶ 15. Through the Reface app, users can create new visual works and digital content by uploading pictures and images from their smartphone and choosing to swap their faces with faces from the pre-set images contained in the Reface app. *Id.* ¶ 2. The new images are commonly "shared by Free Users to 'freak out friends.'" *Id.* ¶ 21.

The newly created photos and video clips have both creative and aesthetic value. *Id.* ¶¶ 4, 21. Aside from the expressive value and being able to "'Become Anyone You Wished to Be,'" *id.* ¶ 3, the Complaint alleges that the new works are also distinctive from the originals. For instance, the Complaint alleges that the Reface app "generates a new watermarked image or video where the individual depicted in the Pre-Sets catalogue has his or her face swapped with the upload face. The watermarked image or video [] prominently displays the Reface application's logo and states 'made with reface app." *Id.* ¶ 2. The Complaint also alleges that the watermarked photos constitute advertisements and thus commercially exploit Plaintiff and other celebrities. *Id.* ¶ 21. Plaintiff alleges that "the watermarks detract from the aesthetic value of the images and thus incentivize Free Users to pay to remove them" and "even if the Free User does not pay for a subscription, the watermarks also serve as free advertising to attract new downloads of the Reface app. *Id.*

On these allegations, Plaintiff brings a single claim for violation of California's statutory right of publicity, Cal. Civ. Code § 3344.

### III.  LEGAL STANDARD

Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper when there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (*quoting Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed.  *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (stating that a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

### IV.  ARGUMENT

Plaintiff brings a single claim for violation of the statutory right of publicity under California Civil Code § 3344.  The right of publicity seeks to prevent commercial exploitation of an individual's identity without that person's consent. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th Cir. 2009) (explaining that the core of the right of publicity is preventing the "merchandising [of] a celebrity's image without that person's consent.").  To bring a statutory right of publicity claim under § 3344, a plaintiff must allege: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; [ ] (4) resulting injury;" and (5) "there must also be an allegation of a knowing[ly] use of the plaintiff's name, photograph

or likeness for purposes of advertising or solicitation or purchases." Cal. Civ. Code § 3344(a); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1008 n.2 (9th Cir. 2017). Plaintiff's claim fails because: (a) it is preempted by the Copyright Act; (b) the First Amendment bars Plaintiff's claim; and (c) because Plaintiff fails to plead a prima facie violation of his right of publicity.

### A. The Copyright Act Preempts Plaintiff's Claim.

"The Copyright Act affords copyright owners the 'exclusive rights' to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work." *Maloney*, 853 F.3d at 1010 (*citing* 17 U.S.C. § 106). Section 301 of the Copyright Act preempts state-law claims that "come within the subject matter of copyright" and assert rights that are "equivalent" to the exclusive rights provided to copyright owners under the Copyright Act. 17 U.S.C. § 301(a).

The Ninth Circuit applies a two-part test to determine whether the Copyright Act preempts a state-law claim. *Maloney*, 853 F.3d at 1010. First, the Court must determine whether the subject matter of the state-law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102-103. *Id.* If the first requirement is met, the Court then considers "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.*

#### 1. The subject matter of Plaintiff's right of publicity claim falls within the subject matter of copyright.

Plaintiff's claim is within the subject matter of copyright. The Copyright Act defines the "subject matter of copyright" to include "original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). "Works of authorship" include "pictorial or graphic" works. *Id.* § 102(a)(5). In *Maloney*, under step one, the Ninth Circuit explained that

state law right of publicity claims are preempted by the Copyright Act "when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use." *Id.* at 1011. But a right of publicity claim is not preempted when the claim concerns the use of one's name or likeness in advertising or the sale of merchandise. *Id.*

The core of Plaintiff's right of publicity claim is that Defendant used photographs and videos of him from the CBS television program, Big Brother, in the free version of its Reface app. *See* Compl. ¶ 2 ("[t]he free version grants the Free User access to the Reface library of movie and show clips and images."); *id.* ¶ 22 (explaining that the pre-set catalogue "contains images and videos often depicting individuals' physical bodies in the role for which they are famous"); *id* ("[i]n Mr. Young's case, the Reface application allows users to swap their face on his body from scenes on CBS's big brother). The photo stills, video clips, and the Big Brother program are clearly within the subject matter of copyright, and Plaintiff has not alleged that he is the copyright holder. Indeed, CBS, as the exclusive licensee of the Big Brother program, has previously sued another network for allegedly infringing copyrights in Big Brother. *See, e.g.*, *CBS Broad. Inc. v. Am. Broad. Cos., et al.*, C.D. Cal. Case No. 12-CV-04073-GAF-JEMx, Complaint (Dkt. 1) at ¶¶ 74-81.[1] The use of photographs of Plaintiff falls within the subject matter of copyright. *See Maloney*, 853 F.3d at 1011.

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a district court properly considers facts for which judicial notice may be taken. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.2d 977, 908 (9th Cir. 2002). Federal Rules of Evidence 201(b) authorizes courts to take judicial notice of facts that are "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The existence of CBS's assertion of an exclusive license in Big Brother in a copyright infringement case is "not subject to reasonable dispute" because it is both generally known within the jurisdiction and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, as it is available on this Court's ECF system.

## 2. Plaintiff asserts rights that are equivalent to rights within the general scope of copyright.

Plaintiff's right of publicity claim asserts rights that are equivalent to those protected by copyright law.  Section 106 of the Copyright Act affords copyright owners "exclusive rights" to display, perform, reproduce, distribute or create derivative copies of their copyrighted works.  17 U.S.C. § 106.  To survive preemption, the asserted state-law right must protect rights that are "qualitatively different from" the rights protected by copyright law.  *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134 (9th Cir. 2006) (citation omitted).  For that reason, non-preempted claims must have an "extra element" that is sufficient to "transform the nature of the action."  *Id.* at 1144.  "But where a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity right claim is little more than a thinly disguised copyright claim" that is preempted.  *Maloney*, 853 F.3d at 1016.

Here, Plaintiff does not identify any use of his name, voice, photograph, or likeness independent of Defendant's use of the copyrighted photos or videos in which Plaintiff is depicted.  Rather, Plaintiff claims that Defendant violated his statutory right of publicity by displaying the photographs in which he appears (Compl. ¶¶ 18, 22); displaying those photographs in its online "Pre-sets" database of photographs (*id.* ¶¶ 24, 39); allowing end users to "generate [] a new watermarked image or video where the individual depicted in the Pre-sets catalogue has his or her face swapped" with the face that was uploaded by the free user (*id.* ¶19); which "commercially exploit [Plaintiff] and other class members' identities to promote paid subscriptions to the Reface application," (*id.* ¶ 21).  Thus, Plaintiff's claim presumes that Reface displays an expressive work—his photo or clips from Big Brother—and allows users to create and distribute derivative works from that work without his permission, both of which are exclusive rights under the copyright law.  Plaintiff's claim alleges nothing more and, therefore, lacks the "extra element" required by law and thus is

qualitatively no different from a copyright claim. *See Laws*, 448 F.3d at 1144 ("[t]he mere presence of an additional element ('commercial use') in section 3344 is not enough to qualitatively distinguish [a] right of publicity claim from a claim in copyright."). Therefore, Defendant's use of Plaintiff's image is entirely subsumed by the rights protected by copyright law and granted to copyright holders, which Plaintiff is not. *Id.*; *Maloney*, 853 F.3d at 1019.

Plaintiff's claim here does not differ materially from the claim in *Maloney*, which the Ninth Circuit held was preempted by Copyright Act. In *Maloney*, college athletes sued the operator of a website that displayed and sold photos of plaintiffs and other athletes that defendant had licensed from the NCAA. *Id.* at 1011-12. The Ninth Circuit rejected plaintiffs' argument that because defendant made a commercial use of their images, their right of publicity claim survived preemption. *Id.* at 1138-40. Because the defendant simply displayed copyrighted photos and sold those photos, the publicity claims overlapped completely with the rights of the copyright owner. *Id.* Plaintiff's claim here is the same. The essence of his claim is that Reface displays photos or video clips of him from CBS shows, and which users can view, make derivative works of and then distribute. Those rights are no different from those reserved by copyright owners and, therefore Plaintiff's right of publicity claim is preempted.

Plaintiff will likely argue that Defendant's addition of a watermark to the photos and videos users create when using the free version of Reface transform the photos into "teaser" advertisements, which use is not preempted. But the "teaser" terminology is a misnomer invented by the Plaintiff. Reface's free version is a fully functional version of the app that is not a time or usage limited promotion, like a true teaser. Like many software products with different feature levels, the PRO version offers features that are not available in the free version. The fact that the PRO and free versions have different feature sets does not make the free version an advertisement for the PRO version.

1    The free version is no different from the PRO version in its core feature. Both
2 allow users to access photos and video clips from the "Pre-Sets" libraries. Both allow
3 users to create derivative works from those source materials. The Complaint makes
4 clear that Plaintiff's right of publicity claims arise out of the display and ability of
5 free Reface users to modify photos and video clips of TV shows in which Plaintiff
6 appeared. *See* Compl. ¶ 22 ("[t]he free version grants the Free User access to the
7 Reface library of movie and show clips and images."); *id*. ¶ 22 (describing how
8 NeoCortext's pre-sets catalogue "contains images and videos often depicting
9 individuals' physical bodies in the role for which they are famous"); *id*. ("In Mr.
10 Young's case, the Reface applications allows users to swap their face on his body
11 from scenes on CBS's big brother."). While the Complaint incants the words
12 "advertising" and "commercial," the conduct that forms the basis of his complaint is
13 equivalent to copyright rights. Plaintiff nowhere alleges that Defendant uses his face
14 on merchandise that it sells or in advertisements that it uses to promote its products.

15   At most, the Complaint alleges Defendant automatically imposes a digital
16 watermark on the *modified* photos or GIFs that do *not* contain his image that free
17 version users create. But simply placing a watermark on an item is not advertising.
18 Where courts have found a use of an image or likeness to be for an advertising or
19 commercial purpose that avoids copyright preemption, the defendant used the image
20 or likeness in advertising that was separate from the copyrighted work itself. *See*
21 *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1000 (9th Cir. 2001). In *Downing*
22 the Ninth Circuit held that the Copyright Act did not preempt Plaintiff's right of
23 publicity claim against a clothing retailer that used Plaintiff's name and photos of
24 him in its catalogue which was the company's "largest advertising vehicle." *Id*. at
25 999, 1000. The defendant also created t-shirts, exactly like those worn by the plaintiff
26 in the photographs and advertised them for sale in the catalogue. *Id*. The Court held
27 that the use of Plaintiff's name and likeness in its primary advertising channel was
28 not preempted. *Id*. at 1005.

FENWICK & WEST LLP
ATTORNEYS AT LAW

In *Maloney,* the Ninth Circuit clarified that "*Downing* did not mint a categorical rule that publicity-right claims 'relating to a likeness in a photograph' are not subject to preemption." *Maloney*, 853 F.3d at 1012. Rather, the preemption analysis turns on how the likeness is used. *Id.* In *Maloney*, as here, the plaintiff's right of publicity claims were based on the alleged display, distribution, and sale of the copyrighted work itself in which the plaintiff's image appeared. *Id.* The alleged commercial use was simply the display and sale of the copyrighted work—both of which were rights exclusively granted under copyright, and the *Maloney* plaintiff's claim was thus, which was preempted. In *Downing*, on the other hand, the defendant used photos of a famous surfer to in advertisements for its surf-themed apparel. Because the defendant was not selling the photos of the Plaintiff, but was using his persona to advertise clothes—something separate from the original works—the use was commercial and advertising. The claim therefore had an additional element and was not subsumed into copyright. *Id.* at 1013 (quotations omitted).

Unlike *Downing*, here, Defendant simply places its watermark on the user's newly generated photos as a way to distinguish the new work from the original work. Defendant does not, nor does the Complaint allege, sell products depicting photographs of Plaintiff. Indeed, watermarks serve as a common way to limit the utility of an object, not further it. For example, Getty Images uses a watermark on all of its photos, but that use does not operate as an advertisement. Common sense dictates that the watermark is used to convey limits on use of the image so that it *won't* be used commercially. *See Creative Photographers, Inc. v. Brook Collection, LLC*, No. 2:20-cv-09261-RGK-E, 2021 WL 3568243, at * 1 (C.D. Cal July 7, 2021) ("Plaintiff placed a watermark on the center of the image, thereby protecting it with copyright management information."); *Playboy Enters., Inc. v. Terri Welles, Inc.*, 78 F.Supp.2d 1066, 1087-88 (S.D. Cal. 1999) (explaining the court's "befuddlement at the oxymoronic meaning" that a watermark, which "is usually located in the

background and not the foreground of a page" could be so prominent as to constitute a commercial theme), *reversed on other grounds*, 279 F.3d 796, 804 (9th Cir. 2002)).

### B. Plaintiff's Right of Publicity Claim is Also Barred by the First Amendment.

Plaintiff cannot prevail on his right of publicity claim for the independent reason that the claim violates the expressive rights of Defendant and its users that are guaranteed by the First Amendment. The California Supreme Court has observed that the "right of publicity threatens two purposes of the First Amendment: (1) preserving an uninhibited marketplace of ideas; and (2) furthering the individual right of self-expression." *Winter v. DC Comics*, 30 Cal. 4th 881, 887 (2003). "[B]ecause celebrities take on personal meanings to many individuals in the society, the creative appropriation of celebrity images can be an important avenue of individual expression." *Id.* (quoting Comedy *III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 397 (2001)).

To balance celebrities' rights of publicity with the First Amendment's protections, California law applies the "transformative use" test, which asks "whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness or imitation." *Winter*, 30 Cal. 4th at 885 (2003) (quoting *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal.4th 387, 391 (2001)). "If distinctions exist, the First Amendment bars claims based on appropriation of the plaintiff's identity or likeness; if not, the claims are not barred." *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 61 (2006). As part of this inquiry, courts look to whether the defendant merely used the plaintiff's likeness as "one of the 'raw materials'" from which a new, creative work is "synthesized" and is therefore protected expression. *Id.* at 57-58. In *Winter*, for example, the California Supreme Court found that depictions of the plaintiff musicians in a comic book series as cartoony, worm-like characters were transformative because they contained "expressive content other than plaintiffs' mere likenesses." *Winter*, 30 Cal. 4th at

890. In *Kirby*, the Court of Appeal similarly found that a video game character which bore similarities to plaintiff (another singer), was transformative because the character was a fanciful, Japanese anime style news reporter from outer space. *Kirby*, 144 Cal. App. 4th 59-61.

Here, as in *Winter* and *Kirby*, the Complaint language itself establishes that Defendant's use in the Reface app of photos and GIFs containing Plaintiff's image is distinct and thus transformative. First, the First Amendment unambiguously protects using software like Reface to create new visual works, especially where the new image "communicate[s] some idea or concept" through a visual medium. *See White v. City of Sparks*, 500 F.3d at 956 (9th Cir. 2007) (explaining that "arts and entertainment constitute protected forms of expression under the First Amendment"). The very purpose of Reface is to transform a photo or video in which Plaintiff's (or others) image appears into a new work in which Plaintiff's face does *not* appear. Display of the original work is a necessary pre-cursor to this transformative process. The Complaint acknowledges this transformative purpose, alleging that the app "uses an artificial intelligence algorithm to allow users to swap faces with actors, musicians, athletes, celebrities, and/or other well-known individuals." Compl. ¶ 1. The Complaint further alleges that the newly generated photos or videos have "aesthetic value." *Id.* ¶ 21. Moreover, Reface users use the newly created images for in "creative ways" like humor and surprise. *Id.* ¶ 4. As *Winter* found, transformed depictions of a celebrity "are no less protected because they provide humorous rather than serious commentary." *Winter*, 30 Cal. 4th at 890. Accordingly, the distinctions between the original photos of Plaintiff and the Reface app's output makes the use transformative.

### C. Plaintiff Fails to Plead a Prima Facie Violation of His Right of Publicity.

Plaintiff fails to allege a prima facie violation of his publicity rights. Under California law, to establish a claim for violation of the statutory right of publicity,

Plaintiff must allege that Defendant "knowingly uses [his] name, voice, signature, photograph, or likeness" for advertising purposes. Cal. Civ. Code § 3344(a). Plaintiff has not sufficiently alleged that Defendant "knowingly" used his, or anyone else's, name, voice, photograph, or likeness for advertising purposes. Rather, Plaintiff merely alleges that Defendant created a "library of movie and show clips and images ('Pre-sets catalogue')" compiled from online sources such as "mybestgif.com, https://tenor.com/, Google Video, and Bing Video." Compl. ¶¶ 2, 15. Reface users could then use photos and GIFs from that catalogue as they wished, and at no charge for the free version. Nothing in the Complaint indicates that Defendant knew Plaintiff's photos and GIFs containing Plaintiff's face were included in the database. The Complaint fails to even mention the words "knowingly," "knew," or any variation of the words outside of listing the legal standard for pleading a violation of the statutory right of publicity. Thus, rather than plead the necessary facts, Plaintiff simply recites the elements of the statute. This is not enough to state a claim. *Bell Atl. Corp.*, 550 U.S. at 555 (mere legal conclusions or recitation of elements of a claim, even if dressed as factual allegations, cannot state a claim).

In the same vein, Plaintiff fails to sufficiently plead that Defendant uses his name in the Reface app. The Complaint lacks factual averments regarding the use of Plaintiff's name. Plaintiff does not attempt to explain how his name was used in the Reface app. Nor does he allege any basis to allow the Court to deduce that one's name would be used, or necessary, for an application based merely on photographs. While the Complaint alleges that "[s]everal animated images of Mr. Young can be found using the Reface application's search bar," Compl. ¶ 18, the Complaint does not allege that users can search for Plaintiff by name, or whether video clips in which he appears are returned by a search for "Big Brother." Even if users could search for Plaintiff by name, the Complaint fails to allege that the search is of data maintained by Plaintiff instead of the third party sources of photos and video clips like Tenor and Google video. *See* Compl. ¶ 15.

Finally, as explained above, *supra* section IV.A.2, the Complaint does not sufficiently allege that the NeoCortext's use constitutes advertising.

## V. CONCLUSION

For the foregoing reasons, NeoCortext requests that the Court grant its motion to dismiss Plaintiff's complaint.

Dated: May 31, 2023               FENWICK & WEST LLP

                                  By: /s/ *Tyler G. Newby*
                                     Tyler G. Newby

                                  Attorneys for Defendant
                                  NEOCORTEXT, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff NeoCortext, Inc., certifies that this brief contains 4,263 words, which complies with the word limited of L.R. 11-6.1.

Dated: May 31, 2023

FENWICK & WEST LLP

By: /s/ *Tyler G. Newby*
    Tyler G. Newby

Attorneys for Defendant
NEOCORTEXT, INC.