**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com
            sbogdanovich@bursor.com

(*Additional Counsel listed on Signature Page*)

*Attorneys for Plaintiff Kyland Young*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| KYLAND YOUNG, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>NEOCORTEXT, INC.,<br><br>                Defendant. | Case No. 2:23-cv-02496-WLH-PVC<br><br>**OPPOSITION TO MOTIONS TO STRIKE UNDER CAL. CODE OF CIV. PROC. §425.16 AND DISMISS UNDER FED. R. CIV. P. 12(B)(6)**<br><br>Date:      July 14, 2023<br>Time:     1:30 p.m.<br>Dept:     Courtroom 9B<br>Judge:   Hon. Wesley L. Hsu<br>Trial Date: None |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ...................................................................................... 3

A.   This Case Falls Outside the Copyright Act's Purview .......................... 3

  1.   Mr. Young's Claim Lies Outside the Subject Matter
       of Copyright .............................................................................. 4

  2.   Mr. Young's Publicity Rights Are Not Identical to
       CBS's Copyrights ...................................................................... 8

B.   The First Amendment Does Not Protect NeoCortext's
     Misappropriation ............................................................................... 10

C.   Mr. Young States a Prima Facie Claim for Relief ............................... 13

D.   California's Anti-SLAPP Is Inapplicable ............................................ 14

III. CONCLUSION .................................................................................. 17

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Altera Corp. v. Clear Logic, Inc.*,
  424 F.3d 1079 (9th Cir. 2005)..................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................13

*Bonilla v. Ancestry.com Operations Inc.*,
  574 F. Supp. 3d 582 (N.D. Ill. 2021) .......................................7

*Camacho v. Control Grp. Media Co., LLC*,
  2022 WL 3093306 (S.D. Cal. July 18, 2022) ....................7, 17

*City of Cotati v. Cashman*,
  29 Cal. 4th 69 (2002)..............................................................15

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
  25 Cal. 4th 387 (2001)......................................................10, 11

*Davis v. Elec. Arts Inc.*,
  775 F.3d 1172 (9th Cir. 2015).........................10, 11, 12, 17

*Dilts v. Penske Logistics, LLC*,
  769 F.3d 637 (9th Cir. 2014).....................................................4

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001)...................................3, 5, 8, 9

*Duncan v. Cohen*,
  2008 WL 2891065 (N.D. Cal. July 22, 2008)................3, 16, 17

*Episcopal Church Cases*,
  45 Cal. 4th 467 (2009)............................................................16

*Gross v. Seligman*,
  212 F. 930 (2d Cir. 1914).....................................................5, 6

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010)...........................2, 6, 9, 10

*In re E.A.*,
   24 Cal. App. 5th 648 (2018) .......................................................................... 14

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   724 F.3d 1268 (9th Cir. 2013) ............................................................ 9, 10, 11, 12

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
   613 F.Supp.3d 1284 (S.D. Cal. 2020) ........................................................ 13

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038 (9th Cir. 2014) ........................................................................ 5

*JAMS, Inc. v. Superior Ct.*,
   1 Cal. App. 5th 984 (2016) ........................................................................ 17

*Kellman v. Spokeo, Inc.*,
   599 F. Supp. 3d 877 (N.D. Cal. 2022) .................................................... 7, 17

*Kirby v. Sega of America, Inc.*,
   144 Cal. App. 4th 47 (2006) ................................................................ 11, 12

*Kuhmstedt v. Enttech Media Grp., LLC*,
   2022 WL 1769126 (C.D. Cal. Apr. 11, 2022) ........................................ 13

*Leibovitz v. Paramount Pictures Corp.*,
   137 F.3d 109 (2d Cir. 1998) ........................................................................ 12

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) .............................................................. passim

*Martinez v. ZoomInfo Techs. Inc.*,
   2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) ...................................... 7

*Midler v. Ford Motor Co.*,
   849 F.2d 460 (9th Cir. 1988) ........................................................................ 14

*Naruto v. Slater*,
   2016 WL 362231 (N.D. Cal. Jan. 28, 2016) ............................................ 4

*No Doubt v. Activision Publ'g, Inc.*,
   192 Cal. App. 4th 1018 (2011) .............................................................. 11, 12

*Park v. Bd. of Trustees of California State Univ.*,
   2 Cal. 5th 1057 (2017) ............................................................................ 3, 15

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ...................................................................... 17

*Playboy Enterprises, Inc. v. Terri Wells, Inc.*,
    78 F. Supp. 2d 1066 (S.D. Cal. 1999) ...................................................... 7, 8

*PowerTV Media, LLC v. Street Racing DigNight, LLC*,
    2017 WL 5665013 (C.D. Cal. Mar. 10, 2017) ........................................... 16

*PrediWave Corp. v. Simpson Thacher & Bartlett LLP*,
    179 Cal. App. 4th 1204 (2009) .................................................................. 16

*Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*,
    768 F.3d 938 (9th Cir. 2014) ..................................................................... 13

*Sessa v. Ancestry.com Operations Inc.*,
    561 F. Supp. 3d 1008 (D. Nev. 2021) ......................................................... 7

*Urantia Found. v. Maaherra*,
    114 F.3d 955 (9th Cir. 1997) ....................................................................... 4

*Wang v. Wal-Mart Real Estate Bus. Trust*,
    153 Cal. App. 4th 790 (2007) .................................................................... 16

*Wilson v. Ancestry.com LLC*,
    2023 WL 1112265 (S.D. Ohio Jan. 31, 2023) ............................................. 7

*Winter v. DC Comics*,
    30 Cal. 4th 881 (2003) ......................................................................... 10, 12

*Zacchini v. Scripps-Howard Broad. Co.*,
    433 U.S. 562 (1977) ................................................................. 2, 10, 12, 13

**STATUTES**

17 U.S.C. § 102 ............................................................................................ 3, 4, 5

17 U.S.C. § 103 ............................................................................................ 3, 4, 5

Cal. Civ. Code § 3344 .................................................................................. 14, 15

Cal. Code of Civ. Proc. § 425.16 ............................................................. 1, 3, 15

Cal. Code of Civ. Proc. § 425.17 ................................................................... 17

1

**RULES**

2

Fed. R. Civ. P. 8 ................................................................................... 13, 17

3

Fed. R. Civ. P. 12 ................................................................................... 1, 17

4

**REGULATIONS**

5

6

7

*Copyright Registration Guidance: Works Containing Material Generated by Artificial Intelligence*,
    88 FR 16190 (Mar. 16, 2023) .............................................................. 4, 5

8

**OTHER AUTHORITIES**

9

10

*Tort Law: Were Warren and Brandeis Wrong?*,
    31 Law & Contemp. Prob. 326 (1966) ................................................ 13

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.     INTRODUCTION

NeoCortext markets its application, *Reface*, as the place to "become anyone you wish[] to be." Complaint, Figure 1. In NeoCortext's words, the point of the application is to let people "'[p]aste your face onto your favorite superhero, TV star, celebrity, or meme gif[.]'" *Id.* This is not, as NeoCortext frames it, a simple app that just lets users perform face swaps with *just anyone.* Motion to Strike at 1 (describing *Reface* as an "app [that] allows end users to create new content by replacing a face in a photo or short video clip with a different face, such as their own.") Instead, the point is to swap faces with well-known people "they admire or desire." *See* Compl. ¶ 1, ¶ 16.  In doing so, NeoCortext "exploit[ed] well-known Californians' names, voices, photographs, and likenesses ***to pitch its product for profit***" without their consent, Compl. ¶ 4, violating Mr. Young and others' publicity rights under California law.

NeoCortext's motions argue that Mr. Young and others' claims are preempted by the Copyright Act. But the subject matter of copyright is limited to works of authorship. And as the Ninth Circuit and the US Copyright Office have noted more than once, only humans are capable of "authorship" under today's Copyright Act— not the generative AI that creates the Teaser Face Swaps that Mr. Young challenges here. Nor does the Copyright Act preempt right of publicity claims targeting the unconsented use of people's likenesses on merchandise or in advertising. But *Reface* did exactly that. It merchandised Mr. Young and others' likenesses throughout the paid PRO version of the app, by marketing *Reface* as the place where users can "become ***anyone*** [they] wished to be," allowing users to "choose ***who*** [they'd] like to become," and using a search engine to index Mr. Young and others. Compl. ¶¶ 16–17. It also used Mr. Young and others as free advertising for new downloads of their app through Teaser Face Swaps. This shows that Mr. Young seeks to vindicate publicity rights that are qualitatively different than copyright.

Next, NeoCortext asserts a First Amendment transformative use defense. This fails because NeoCortext cannot point to anything *Reface* actually does that is transformative. NeoCortext's Pre-Sets catalogue uses literal depictions of Mr. Young and others in the roles for which they are famous, without any alterations by NeoCortext itself. The Teaser Face Swaps similarly keep Mr. Young's identifying characteristics; NeoCortext adds nothing new aside from its watermarks. This is not enough; "merely merchandising a celebrity's image without that person's consent, the prevention of which is the core of the right of publicity, does not amount to a transformative use." *Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th Cir. 2010). Instead, NeoCortext asks the Court to speculate about the countless creations that its users would, could, or should create using its platform. But just as NeoCortext cannot use Mr. Young's identity for its own commercial purposes, it also cannot claim *Reface* users' down-stream transformations as its own. Several courts have already analyzed transformative use in a similar context: interactive video games. Every single one based their decision on how the developer designed the game, never how players played the game.

To be clear, Mr. Young is not trying to stop Adobe or other generative AI companies from providing technology that allows people to create funny face swaps to share with friends. He is simply trying to stop *Reface* from promoting its product by using and merchandising his identity and his face. "There is no doubt that entertainment… enjoys First Amendment protection… But… neither the public nor [NeoCortext] will be deprived of the benefit of [Mr. Young]'s performance as long as his commercial stake in his act is appropriately recognized. [Mr. Young] does not seek to enjoin the broadcast of his performance; he simply wants to be paid for it." *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 578 (1977).

NeoCortext also claims that the Complaint does not plead that NeoCortext *knew* it was using Mr. Young, or his name, to pitch its product for profit. But

1    "NeoCortext knows that the face swapped images it generates are shared by Free

2    Users to '[f]reak out friends.'" Compl. ¶ 21. And it can be reasonably inferred that

3    NeoCortext knew it was using Mr. Young's name by the fact that it programed an

4    app that indexed him in its search bar and allowed users to choose to become him.

5    *Id*. ¶ 18. This "short and plain statement" is enough to satisfy Rule 8(a)(2).

6        Lastly, NeoCortext's anti-SLAPP motion is improper. NeoCortext cannot

7    identify how Mr. Young's claim implicates anything NeoCortext is doing to advance

8    *its own* speech, separate and apart from *Reface* users' speech. The law only applies

9    to "[a] cause of action *against a person* arising from any act of *that person* in

10   furtherance of *the person's* right of petition or free speech." Cal. Code of Civ. Proc.

11   § 425.16(b)(1) (emphasis added). And the only "person" this refers to is NeoCortext.

12   *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1063 (2017).

13   NeoCortext cannot invoke California's anti-SLAPP protections by speculating about

14   what face swaps *other people* not before this Court might make. Indeed, Mr.

15   Young's claim does not challenge NeoCortext's speech at all. It challenges the

16   *commercial use* of his identity in (1) the PRO Version of the *Reface* app and (2) in

17   Teaser Face Swaps; not the use of his person in the Free Version of *Reface* app that

18   is unrelated to advertising. Compl. ¶¶ 41-42; *Duncan v. Cohen*, 2008 WL 2891065,

19   at *2 (N.D. Cal. July 22, 2008).

20       For these reasons, NeoCortext's motions should be denied.

21   **II.    ARGUMENT**

22       **A.    <u>This Case Falls Outside the Copyright Act's Purview</u>**

23       "In order for preemption to occur under the federal Copyright Act, two

24   conditions must be satisfied. First, the content of the protected right must fall within

25   the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103. Second,

26   the right asserted under state law must be equivalent to the exclusive rights contained

27   in section 106 of the Copyright Act." *Downing v. Abercrombie & Fitch*, 265 F.3d

28

---

994, 1003 (9th Cir. 2001). "Defendants… bear the burden of proof in establishing the affirmative defense of preemption." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 649 (9th Cir. 2014).

### 1. Mr. Young's Claim Lies Outside the Subject Matter of Copyright

To determine whether a right of publicity claim is preempted by the Copyright Act, "we decide 'whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103.'" *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017). The subject matter of Mr. Young's right of publicity claim lies outside the subject matter of copyright for three reasons.

**First, the AI-generated Teaser Face Swaps at issue in Mr. Young's right of publicity claim are not authored by humans**. "The 'subject matter of copyright' embodies '… works of authorship.'" *Maloney*, 853 F.3d at 1011. And as it stands today, authorship under the Copyright Act only extends to works created by humans.[1] *Urantia Found. v. Maaherra*, 114 F.3d 955, 958 (9th Cir. 1997) ("[I]t is not creations of divine beings that the copyright laws were intended to protect… [but rather] human creativity."); *Naruto v. Slater*, 2016 WL 362231, at *3 (N.D. Cal. Jan. 28, 2016) ("[T]he Copyright Act does not 'plainly' extend the concept of authorship… to animals[.]"), *aff'd*, 888 F.3d 418 (9th Cir. 2018) (recognizing the Copyright Act's use of the "terms 'children,' 'grandchildren,' 'legitimate,' 'widow,' and 'widower' all imply humanity."). The Copyright Office has taken the express position that AI creations are not works of authorship. *See Copyright Registration*

[1] Mr. Young makes this argument based on the state of the law today. To be sure, Congress may ultimately decide to amend the Copyright Act to recognize works of authorship that generative artificial intelligence models create. Were it to do so, NeoCortext's preemption argument still fails because it merchandises and advertises its products using Mr. Young's identity without his permission.

*Guidance: Works Containing Material Generated by Artificial Intelligence*, 88 FR 16190 (Mar. 16, 2023). "[W]hen an AI technology receives solely a prompt from a human and produces complex… visual… works in response, the 'traditional elements of authorship' are determined and executed by the technology—not the human user. Based on the Office's understanding of the generative AI technologies currently available, users do not exercise ultimate creative control over how such systems interpret prompts and generate material. Instead, these prompts function more like instructions to a commissioned artist." *Id*.

Yet "*Reface*… uses an ***artificial intelligence*** algorithm to allow users to swap faces." Compl. ¶ 1 (emphasis added). This AI receives solely visual prompts from app users, *id*. ¶ 19, and generates new hyper-realistic visual works that mix different individuals' facial features, alter skin tones, arrange the facial positions, and adjust lighting and shading, *see id*., Figures 6-14. Thus, while the Teaser Face Swaps are certainly original and creative, they cannot be called works of authorship. As the Copyright Office's agrees, its views should logically apply here. *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041 (9th Cir. 2014) ("Because the Copyright Office's reasoning is persuasive, we adopt it for this case.").

Throughout its motions, NeoCortext emphasizes the creativity of human *Reface* users. But the only element of human creativity present in a *Reface* face swap is the users' selection of two individual faces for swapping. This won't do. The Copyright Act is not concerned with the selection of faces because a "person's… likeness is not a work of authorship within the meaning of 17 U.S.C. § 102." *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. 2001). "This is a risk which the [*Reface* user] takes when he merely produces a likeness of an existing face… instead of supplementing its features by the exercise of his own imagination." *Gross v. Seligman*, 212 F. 930, 931 (2d Cir. 1914). Over a century ago, the *Gross* Court recognized that a photographer cannot assert another is infringing on their

copyright for merely photographing the same woman. *Id*. Instead, it held that the original photographer's selection of the "pose, light, and shade, etc., … made the first photographic picture a subject of copyright." *Id*. Humans do not select the poses, lights, or shades of likeness in any of the face swaps; the *Reface* AI does. Thus, the face swaps here cannot be human works of authorship that are within the subject matter of copyright.

**<u>Second</u>, Mr. Young and others' identities are merchandised on *Reface***. "[A] publicity-right claim is not preempted when it targets non-consensual use of one's name or likeness ***on merchandise***." *Maloney*, 853 F.3d at 1011 (emphasis added). Preventing companies like NeoCortext from "merchandising a celebrity's image without that person's consent [lies at] the core of the right of publicity." *Hilton v. Hallmark Cards*, 599 F.3d 894, 910 (9th Cir. 2010). And that is exactly what this case is about. Compl. ¶ 42. NeoCortext markets *Reface* as the place where people can paste their faces "onto [their] favorite superhero, TV star, celebrity, or meme gif." *Id.* ¶ 1 (quoting its listing on the Apple App Store). It illustrates its AI's capabilities of swapping faces on several well-known real individuals and fictional characters, prompts users to "become ***anyone*** you wished to be" and "choose ***who*** you'd like to become," and indexes individuals like Mr. Young in its search bar function. *Id*. ¶¶ 16-18 (emphasis added). In other words, not only are Mr. Young and other well-known individuals' identities used to sell the product; they ***are*** the product. As the *Reface* app's name reflects, these identities are inextricably intertwined with the app and its purpose.

**<u>Third</u>, Mr. Young's identity was used to advertise *Reface***. "[A] publicity-right claim is [also] not preempted when it targets non-consensual use of one's name or likeness… ***in advertising***." *Maloney*, 853 F.3d at 1011 (emphasis added). The *Reface* app uses Mr. Young and class members' images, voices, and likeness in its Pre-Sets catalogue and Teaser Face Swaps, which serve as free advertising for

Defendant. Compl. ¶¶ 21, 40-41.

Many courts within this Circuit have held that "'teaser[s]' showing some[thing] about the individual and offering 'full access' in exchange for a fee-based subscription" are "purely commercial in nature." *Martinez v. ZoomInfo Techs. Inc.*, 2022 WL 1078630, at *1, *6 (W.D. Wash. Apr. 11, 2022). "The teasers are advertisements. They reference a specific product [the *Reface* app]. And [NeoCortext] has economic motivation for publishing them." *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 899–900 (N.D. Cal. 2022) (internal citations omitted); *accord Camacho v. Control Grp. Media Co., LLC*, 2022 WL 3093306, at *19 (S.D. Cal. July 18, 2022). NeoCortext's economic motivation in creating the Teaser Face Swaps are to "incentivize Free Users to pay to remove [the watermark and] attract new downloads of the Reface application [when the watermarked images] are shared by Free Users to 'freak out friends.'" Compl. ¶ 21.

Courts also uniformly hold that similar "teasers" claiming "there is more to see" about individuals functioned as advertisements and thus the individuals' right of publicity claims fell outside the subject matter of copyright. *Sessa v. Ancestry.com Operations Inc.*, 561 F. Supp. 3d 1008, 1033 (D. Nev. 2021); *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 594 (N.D. Ill. 2021); *Wilson v. Ancestry.com LLC*, 2023 WL 1112265, *14 (S.D. Ohio Jan. 31, 2023) (referring to this practice as a "teaser"). "Unlike in *Maloney*, Ancestry does not merely offer a repository of photos that customers may download for purely personal use. Rather… when free trial users scroll over links to information about a person, they are told, '[t]here's more to see' about each person through a pop-up advertisement." *Sessa*, 561 F. Supp. 3d at 1033. Likewise, here, "there's [literally] more to see" once a *Reface* app user pays for a PRO subscription and removes the watermark.

Citing *Playboy Enterprises, Inc. v. Terri Wells, Inc.*, 78 F. Supp. 2d 1066 (S.D. Cal. 1999), NeoCortext argues that "[c]ommon sense dictates that the

watermark is used to convey limits on use of the image so that it *won't* be used commercially." MTD at 9; MTS at 13-14 (emphasis in original). But *Playboy* stands for nothing close to that assertion. In fact, the court in *Playboy* explicitly noted that the parties did not dispute that Defendant's "use of the contested terms [appearing in watermarks was] ***predominantly commercial***." *Playboy Enterprises, Inc.*, 78 F. Supp. 2d. 1085 (emphasis added). Instead, *Playboy* stands for the obvious proposition that "a watermark in the 'background' [is not] 'prominent.'" *Id*. at 1087. But copyright preemption doesn't turn on whether the advertising was prominent or subtle; it turns on whether individual "likenesses were ever used in ***any*** advertising." *Maloney*, 853 F.3d at 1018 (emphasis added).

NeoCortext asserts that it "simply places its watermark on the user's newly generated photos as a way to distinguish the new work from the original work." MTD at 9; MTS at 13. This post-hoc rationale falls flat: NeoCortext ***removes the watermarks*** after users pay for a PRO subscription. Compl. ¶ 20. If NeoCortext were sincerely concerned that people could not tell the difference between an original work featuring a well-known individual and a new work featuring themselves or their friends, it would include watermarks on face swaps for both its free and paying users.

As noted above, "two ***conditions*** must be satisfied… [i]n order for preemption to occur." *Downing*, *supra*, 265 F.3d at 1003 (emphasis added). Because NeoCortext has failed to show the first condition, its preemption argument fails at the outset.

Even still, NeoCortext cannot satisfy the second condition either.

## 2. Mr. Young's Publicity Rights Are Not Identical to CBS's Copyrights

"At the second step, we determine whether the rights plaintiffs assert under state law are '***equivalent*** to rights within the general scope of copyright.'" *Maloney*, 853 F.3d at 1019 (citations omitted) (emphasis added). "If a state law claim includes

an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act, the state law claim is not preempted by the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). In other words, preemption has been reserved for when the publicity rights asserted completely converge with copyright and plaintiffs "do not identify any use of their likenesses independent of the display, reproduction, and distribution of the copyrighted material in which they are depicted." *Maloney*, 853 F.3d at 1019.

To be sure, "[t]he cousinage between copyright liability and the right to publicity has long been recognized." *Hilton v. Hallmark Cards*, 599 F.3d 894, 909, n.12 (9th Cir. 2010). But cousins are not identical twins. And the publicity rights Kyland Young asserts are not the copyrights in *Big Brother*. *See, e.g.*, *Downing*, 265 F.3d at 1003–05 (recognizing that copyright over a person's photo is different from that person's publicity rights in his or her likeness). As discussed above, the "extra element" he alleges is the use of his own personal identity in an application which allows users to search for *him*, choose *him* and become *him* by interfacing with an artificial intelligence. This use of Mr. Young's identity in an interactive app, including in the Teaser Face Swaps, is "independent of the display, reproduction, and distribution of the copyrighted images in which [he is] depicted," and renders his claim "qualitatively different" than copyright. *Maloney*, 853 F.3d at 1008-1009, 1019; *Downing*, 265 F.3d at 1005 ("Because the subject matter of the [a]ppellants' statutory and common law right of publicity claims is their names and likenesses, which are not copyrightable, the claims are not equivalent to the exclusive rights contained in [the Copyright Act].") Indeed, *Maloney* itself cited just such a situation approvingly, noting that right of publicity claims would not be preempted in a case involving the use of individuals' likenesses in an interactive video game. *Id*. at 1018, n.13 (citing *In re NCAA Student-Athlete Name & Likeness Licensing Litig*., 724 F.3d 1268, 1271 (9th Cir. 2013)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    The First Amendment Does Not Protect NeoCortext's Misappropriation**

NeoCortext's "'transformative use' defense poses 'what is essentially a balancing test between the First Amendment and the right of publicity.'" *Hilton v. Hallmark Cards*, 599 F.3d 894, 909 (9th Cir. 2010) (*citing Winter v. DC Comics*, 30 Cal. 4th 881, 885 (2003)). "[W]hen an artist's skill and talent [are] manifestly subordinated to the overall goal of creating a conventional portrait of a celebrity so as to commercially exploit his or her fame, then the artist's right of free expression is outweighed by the right of publicity." *Comedy III Prods., Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 408 (2001). Because this is an affirmative defense, NeoCortext bears "the burden of establishing the transformative use defense as a matter of law." *Davis v. Elec. Arts Inc*., 775 F.3d 1172, 1177 (9th Cir. 2015).

NeoCortext's transformative use defense fails because the *Reface* app merchandises Mr. Young and other class members' identities. As *Hilton* explained, "it is clear that merely merchandising a celebrity's image without that person's consent, the prevention of which is the core of the right of publicity, does not amount to a transformative use." 599 F.3d at 910. And as noted above, NeoCortext uses Mr. Young and others' likenesses to such a pervasive degree in the Re*face* app that they become the product being sold.

The *Reface* app also "often depicts individuals [and their] physical bodies in the roles for which they are famous." Compl. ¶ 22. The Supreme Court has noted that the "strongest case for a 'right of publicity' [against a First Amendment challenge] involve[es]… the appropriation of the very activity by which the entertainer acquired his reputation in the first place." *Zacchini v. Scripps-Howard Broad. Co*., 433 U.S. 562, 576 (1977). Thus, in *In re NCAA Student-Athlete Name & Likeness Licensing Litigation*, the Ninth Circuit held that a video developer could not establish a transformative use defense in a California right of publicity class action where the developer "replicated [the student-athlete class members'] physical

characteristics in *NCAA Football*... in the performance of the same activity for which they are known in real life." 724 F.3d at 1276. The same result held true in multiple other California right of publicity cases also featuring video games. *Accord Davis*, 775 F.3d at 1178 (rejecting developer's transformative use defense where retired professional football players were realistically depicted in a virtual football game); *No Doubt v. Activision Publ'g, Inc.*, 192 Cal. App. 4th 1018, 1030 (2011) (rejecting developer's transformative use defense where a rock band was realistically depicted in a rock music playing game).[2]

Also, the transformative use defense here is significantly weaker than in any of those video game cases. Whereas in those cases, the videos games used digital avatars to depict the plaintiffs, the *Reface* app uses "literal depictions" of Mr. Young's likeness and other well-known Californians, ***without any*** alterations of its own. As *Kirby* recognized (in the context of video games) the transformative use defense will not shield companies like NeoCortext that use "literal depictions or imitations for [their own] commercial gain by works which do not add significant new expression." 144 Cal. App. 4th at 58 (2006).

On the other side of the balancing test, NeoCortext cannot point to anything transformative that NeoCortext itself does. It adds no "artist[ic] skill or talent" to the resulting face swaps. *Comedy III*, 25 Cal. 4th at 408. So instead, it asks the Court to speculate about the myriad "creative ways" that "Reface ***users*** use the newly created images for... humor and surprise." MTD at 11, MTS at 15 (emphasis added). Mr.

---

[2] NeoCortext cites one video game case in support of its transformative use defense, *Kirby v. Sega of America, Inc.*, 144 Cal. App. 4th 47 (2006). *Kirby* illustrates the same point made in *Zachinni* and is distinguishable for exactly that reason. *Id.* at 59. Unlike this case, in *Kirby*, a video game's use of an individual's persona was transformative because she was not realistically portrayed in the role for which she was famous. *Id.* Instead, the "lead singer of a retro-funk-dance musical group," was reimaged in the game as a "Japanese style... anime" character that was a "space age reporter" set 400 years into the future. *Id.*

Young does not dispute that face swaps can be parodical and transformative. *See Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 114–15 (2d Cir. 1998). But Mr. Young's right of publicity "case ***is not*** about the…  creative ways *Reface* application users choose to use the Defendant's technology. [H]is case is about a company exploiting well-known Californians' names, voices, photographs, and likenesses ***to pitch its product for profit***." Compl. ¶ 4 (emphasis in original). And there is no authority for NeoCortext's bold suggestion that the developer of an interactive program, like *Reface*, can manufacture a transformative use defense based on the ways program users choose to use the program. Indeed, every other court that analyzed the defense for interactive video games looked at whether a developer ***designed the game*** in a transformative way, ***never*** whether players played the game in a transformative way. *In re NCAA*, 724 F.3d at 1276; *Davis*, 775 F.3d at 1178; *No Doubt*, 192 Cal. App. 4th at 1030; *Kirby*, 144 Cal. App. 4th at 59.

The transformative use defense springs from the First Amendment's goals of "(1) preserving an uninhibited marketplace of ideas; and (2) furthering the individual right of self-expression." *Winter*, 30 Cal. 4th at 887. Neither of these is compromised by this case. *Reface* users will not be dissuaded from making their own face swaps of Mr. Young or other individuals using Adobe Photoshop or other Generative AI platforms that do not merchandise or advertise Mr. Young and other well-known Californians. As *Zacchini* put it: "There is no doubt that entertainment… enjoys First Amendment protection… But it is important to note that neither the public nor [NeoCortext] will be deprived of the benefit of [Mr. Young]'s performance as long as his commercial stake in his act is appropriately recognized. [Mr. Young] does not seek to enjoin the broadcast of his performance; he simply wants to be paid for it." 433 U.S. at 578. "'The rationale for (protecting the right of publicity) is the straightforward one of preventing unjust enrichment by the theft of good will. No social purpose is served by having the defendant get free some aspect of the plaintiff

1   that would have market value and for which he would normally pay.'" *Id*. at 576

2   (quoting Kalven, *Privacy in Tort Law: Were Warren and Brandeis Wrong?*, 31 Law

3   & Contemp. Prob. 326, 331 (1966)).

### C.   Mr. Young States a Prima Facie Claim for Relief

5   NeoCortext finally claims that the Complaint does not sufficiently allege that

6   NeoCortext *knew* it was using Mr. Young, or his name, to pitch its product for profit.

7   Mr. Young need not read NeoCortext's mind to state his claim. He just needs to

8   provide NeoCortext a short and plain statement that plausibly states a claim for relief

9   (assuming it is true). Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S.

10   544, 555 (2007). And he has done that.

11   Mr. Young alleges that "NeoCortext knows that the face swapped images it

12   generates are shared by Free Users to '[f]reak out friends.'" Compl. ¶ 21. It can be

13   reasonably inferred that NeoCortext knew it was using Mr. Young's name (and

14   image, likeness, and other legally cognizable aspects of his identity) in particular by

15   the fact that it programed an app that scraped video clips of him, indexed him in its

16   database, permitted him to be searchable through the app's search bar, and allowed

17   users to choose to become him. *Id*. ¶ 18. *Retail Prop. Tr. v. United Bhd. of

18   Carpenters & Joiners of Am*., 768 F.3d 938, 945 (9th Cir. 2014) ("In reviewing a

19   motion to dismiss… we must… draw all reasonable inferences in favor of the

20   nonmoving party.") "Plaintiff's allegations support the circumstantial inference that

21   Defendant[] acted with the knowledge… It is unreasonable to demand that a plaintiff

22   offer more detailed allegations regarding a defendant's mental state at this early

23   stage before a plaintiff has even conducted any discovery." *Kuhmstedt v. Enttech

24   Media Grp., LLC*, 2022 WL 1769126, at *4 (C.D. Cal. Apr. 11, 2022). Indeed,

25   questions about the nature and extent of a defendant's knowledge "are better suited

26   for a motion for summary judgment when the record is more fully developed." *In re

27   Solara Med. Supplies, LLC Customer Data Sec. Breach Litig*., 613 F.Supp.3d 1284,

28

1298 (S.D. Cal. 2020) (denying motion to dismiss).

NeoCortext also complains that "Plaintiff does not attempt to explain how his name was used in the Reface app." MTD at 12; MTS at 16. It was used in the search bar. *See* Compl. ¶ 18 ("Several animated images of Mr. Young can be found using the *Reface* application's search bar."). NeoCortext's pedantry—*see* MTD at 15; MTS at 17 (asserting "the Complaint does not allege that users can search for Plaintiff by name")—doesn't change that the search bar's use and function are reasonably inferred from the Complaint's allegations and the app's function.

In any event, NeoCortext's grievances about the alleged use of Mr. Young's name are superficial and inconsequential. To state a claim that NeoCortext violated his publicity rights, Mr. Young need not even show his name was used. *See, e.g.*, *Midler v. Ford Motor Co.*, 849 F.2d 460, 462 (9th Cir. 1988) (finding singer had triable right of publicity claim for an ad mimicking her voice, even though "[n]either the name nor the picture of Midler was used.") Indeed, this is apparent by the language of California's right of publicity statute, which concerns the "use[] [of] another's name, voice, signature, photograph, *or* likeness." Cal. Civ. Code § 3344(a) (emphasis added). Under California law, "the plain and ordinary meaning of the word 'or,' when used in a statute, is to designate separate, disjunctive categories. The word 'or' suggests alternatives. In its ordinary sense in a statute, the function of the word 'or' is to mark an alternative such as 'either this or that.'" *In re E.A.*, 24 Cal. App. 5th 648, 661 (2018) (cleaned up). Ultimately, NeoCortext does not deny using one *or* more of these identifiers without Mr. Young's consent.

### D.   California's Anti-SLAPP Is Inapplicable

NeoCortext's anti-SLAPP motion fails because it does not, and cannot, argue that this case arises out of anything *it* did to advance *its own* right to free speech. Instead, NeoCortext claims that "Plaintiff's claim arises out of the Reface *users'* ability to modify images of celebrities and public figures." MTS at 6 (emphasis

added). This forecloses NeoCortext's anti-SLAPP motion. Anti-SLAPP protections only apply to "[a] cause of action against *a person* arising from any act of *that person* in furtherance of *the person's* right of petition or free speech." Cal. Code of Civ. Proc. § 425.16(b)(1) (emphasis added). The only "person" this refers to is NeoCortext.  "[T]he defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." *Park v. Bd. of Trustees of California State Univ.*, 2 Cal. 5th 1057, 1063 (2017) (quoting *City of Cotati v. Cashman*, 29 Cal. 4th 69 (2002) (emphasis in original). The law does not contemplate amorphous *Reface* users not before this Court.

NeoCortext also argues that it "furthers free speech," by "[g]iving users a platform" to say something. MTS at 7. That might be true, but the anti-SLAPP statute does not protect acts in furtherance of *other people's* right of petition or free speech. Indeed, by NeoCortext's logic, a loudspeaker manufacturer sued for a product defect could invoke the anti-SLAPP statute because its loudspeaker was used at a political rally: it sold a defective loudspeaker, and thereby gave others a platform to further their right of free speech. Because NeoCortext misreads the plain language of the anti-SLAPP statute and fails to argue Mr. Young's claim arises out of anything NeoCortext does to further its own speech, as opposed to its users' speech, the Court should deny its anti-SLAPP motion.

To be sure, none of the actions at issue further NeoCortext's own rights to petition or free speech; they furthered NeoCortext's bottom line. "[I]n ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." *Park*, 2 Cal. 5th at 1063. The essential element of Mr. Young's right of publicity claim is NeoCortext's "*commercial use*" of his identity. *See* Cal. Civ. Code § 3344(a). Mr. Young alleges that NeoCortext commercially used his identity in (1) the Teaser Face Swaps, and (2) the PRO Version of the *Reface* app without his

consent. Compl. ¶¶ 41-42. In other words, Mr. Young's claim does not challenge *what* NeoCortext **says** at all, but *how* it **monetizes** his identity. *Wang v. Wal-Mart Real Estate Bus. Trust*, 153 Cal. App. 4th 790 (2007) (holding that anti-SLAPP did not apply to where "[t]he overall thrust of the complaint challenge[d] the manner in which the parties privately dealt with one another, on both contractual and tort theories, and d[id] not principally challenge" any protected activity.)

What is more, NeoCortext's anti-SLAPP motion still fails even if *Reface* users' hypothetical creations are considered. Where a complaint alleges "both [the users'] protected and [NeoCortext's] unprotected activity, it is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies. Incidental allegations regarding [*Reface* users'] protected activity do not subject the cause of action to the anti-SLAPP statute." *PrediWave Corp. v. Simpson Thacher & Bartlett LLP*, 179 Cal. App. 4th 1204, 1219-1220 (2009) (cleaned up). And this action's principal thrust is NeoCortext's exploitation of Mr. Young and others' fame for its own commercial gain. Compl. ¶4. "The additional fact that protected activity may lurk in the background… does not transform a[n] [intellectual] property dispute into a SLAPP suit." *Episcopal Church Cases*, 45 Cal. 4th 467, 478 (2009). Indeed, not all cases involving public figures or "films are subject to an anti-SLAPP suit." *Duncan v. Cohen*, 2008 WL 2891065, at *3 (N.D. Cal. July 22, 2008); *accord PowerTV Media, LLC v. Street Racing DigNight, LLC*, 2017 WL 5665013, at *13-*14 (C.D. Cal. Mar. 10, 2017).

*Duncan* is particularly instructive. There, the court held that the anti-SLAPP statute did not apply to a "right of publicity claim [] *based on* the [defendants'] use of [plaintiff's] name to solicit funds for production of a film." 2008 WL 2891065, at *2 (emphasis in original). The court held that the "action centers on [intellectual property rights and] not protected activity" because the "suit in no way seeks limits the [defendants'] ability to spread their message…through film, or any other

medium… [and] does not prevent the [defendants] from making a coming-of-age film about environmental activism." *Id*. Likewise, this action centers on Mr. Young and others' right to profit from their own likeness. Nor does the suit try to stop "deep-fake technology or the creative ways *Reface* application users choose to use the Defendant's technology." Compl. at ¶ 4. For these reasons, the anti-SLAPP statute does not apply.[3]

Lastly, even if the Court finds NeoCortext could make its prima facie showing that the anti-SLAPP statute applies, Mr. Young shows a likelihood of prevailing on his claims. *Davis*, 775 F.3d at 1177 (To defeat an anti-SLAPP motion, plaintiffs need only show a "reasonable probability they will prevail on their claims" which "requires only a 'minimum level of legal sufficiency and triability.'"). As discussed above, Mr. Young plausibly pleads his right of publicity claim and NeoCortext cannot prove its affirmative defenses. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018) ("If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards."). As such, even if the anti-SLAPP statute applied, the Court should still deny NeoCortext's motion in its entirety.

## III.   CONCLUSION

For these reasons, NeoCortext's motions to strike and dismiss should be denied.

---

[3] What's more, NeoCortext's Teaser Face Swaps also fall squarely within the Anti-SLAPP's commercial speech exception. Cal. Code of Civ. Proc. § 425.17(c). This exception asks "whether the speech at issue is about the speaker's product or service or about a competitor's product or service, whether the speech is intended to induce a commercial transaction, and whether the intended audience includes an actual or potential buyer for the goods or services." *JAMS, Inc. v. Superior Ct.*, 1 Cal. App. 5th 984, 995 (2016). As noted above, the commercial speech exception applies to NeoCortext's Teaser Face Swaps, which are advertisements for PRO subscriptions to the Reface app. *Kellman*, 599 F.Supp.3d at 899–900; *Camacho*, 2022 WL 3093306, at *19.

Dated:  June 23, 2023

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*/s/ Stefan Bogdanovich*_____
Stefan Bogdanovich

L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
          sbogdanovich@bursor.com

Philip L. Fraietta (*admitted pro hac vice*)
1330 Avenue of the Americas, 32nd Floor
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: pfraietta@bursor.com

**EDELSON PC**
Michael Ovca (*admitted pro hac vice*)
50 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile:  (312) 589-6378
Email: movca@edelson.com

**WILSHIRE LAW FIRM**
Thiago M. Coelho (State Bar No. 324715)
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
Email: thiago@wilshirelawfirm.com

*Attorneys for Plaintiff*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Kyland Young, certifies that this brief contains **5,806** words, which complies with the word limit of L.R. 11-6.1.

/s/ Stefan Bogdanovich
Stefan Bogdanovich