UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLAND YOUNG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NEOCORTEXT, INC.,<br><br>Defendant. | Case No. 2:23-cv-02496-WLH(PVCx)<br><br>**ORDER RE DEFENDANT'S MOTION TO STRIKE [32] AND MOTION TO DISMISS [33]** |

I.  **BACKGROUND**

This is a putative class action. Defendant NeoCortext, Inc. ("NeoCortext") is the developer of the "Reface" application. (Compl., Docket No. 1 ¶ 6). Users may download Reface to their smartphone through the Apple App Store or the Google Play Store. (*Id.* ¶ 6). Reface "allows users to swap their faces with actors, musicians, athletes, celebrities, and other well-known individuals in scenes from popular shows, movies, and other short-form internet media." (*Id.* ¶ 13). The application contains a "Pre-sets" catalogue containing images and videos of different celebrities compiled from a variety of websites. (*Id.* ¶¶ 15, 18–19). The catalogue is searchable and allows

users to find specific individuals to swap faces with. (*Id.* ¶ 18). Once a user has selected an individual, she may upload an image to Reface from her smartphone. (*Id.* ¶ 19). The application then identifies the faces in the photographs and generates a new image, swapping the face of the celebrity for that of the person in the user-uploaded image. (*Id.*). In that way, according to the marketing for Reface, the user can "choose who [they would] like to become." (*Id.* ¶ 17).

NeoCortext offers both free and "PRO" versions of Reface. (*Id.* ¶ 14). Both versions give the user access to the Pre-sets catalogue. (*Id.* ¶ 15). With the free version of Reface, the user-generated face-swapped image is watermarked with text that says "made with reface app." (*Id.* ¶ 2). Below the generated image is a button showing a crossed-out water drop symbol. (*Id.* ¶ 20). If the user hits that button, they are prompted to pay for a PRO subscription at $5.99 for a week or $36.99 for a lifetime. (*Id.*). With Reface PRO, face-swapped images are not watermarked. (*Id.*).

Plaintiff Kyland Young is a cast member of several reality television shows, including the CBS show *Big Brother*. (*Id.* ¶ 5). The Reface Pre-sets catalogue contains videos and images of Young from *Big Brother*. (*Id.* ¶ 39). Plaintiff alleges that Defendant "was using his identity to solicit the purchase of paid subscriptions to the *Reface* application" and that "[t]here are several animated images depicting Mr. Young on the *Reface* application, which Free and PRO Users can manipulate to become him." (*Id.* ¶¶ 23–24). Young did not consent to NeoCortext's use of his image in the Reface application, and he has never received compensation for the use of his image in the Reface application. (*Id.* ¶¶ 25–26). Nevertheless, he says, NeoCortext profits from using his likeness in the Reface application. (*Id.* ¶ 3).

Young is suing NeoCortext for violation of the right of publicity under California Civil Code section 3344. (*Id.* ¶ 37). Young alleges that the watermarked images created with the free version of Reface are "teasers," and that the watermarks "incentivize users to pay to remove them" and "serve as free advertising to attract new

downloads of the Reface application." (*Id.* ¶ 21). He also alleges that the images generated with the PRO version of Reface are "paid product[s]" that "constitute[] commercial use and purpose." (*Id.* ¶¶ 42–43). Therefore, he alleges, NeoCortext "us[es] his identity to solicit the purchase of paid subscriptions to the Reface application." (*Id.* ¶ 23). Young seeks to represent a class of "California residents whose name, voice, signature, photograph, or likeness was displayed on a Reface application Teaser Face Swap or the PRO Version of the Reface application on or after April 3, 2021," three years before he filed the Complaint. (*Id.* ¶ 29).

NeoCortext moves to dismiss Young's single cause of action under Federal Rule of Civil Procedure 12(b)(6). (Mot. to Dismiss, Docket No. 33). It also brings a special motion to strike under California's anti-SLAPP statute, California Code of Civil Procedure section 425.16. (Mot. to Strike, Docket No. 32). Young opposes both motions. (Opp'n to Mots. to Dismiss and to Strike, Docket No. 35).

## II. LEGAL STANDARD

### A. Anti-SLAPP Motion to Strike

Under California's "anti-SLAPP" law[1], California Code of Civil Procedure section 425.16, defendants may move to strike "actions… that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (quotations omitted). Importantly, "[t]he anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity." *Baral v. Schnitt*, 1 Cal. 5th 376, 384 (2016) (emphases in original).

---

[1] The "SLAPP" in anti-SLAPP stands for "strategic lawsuit against public participation." *See, e.g.*, *Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 4 Cal. 5th 637, 639 (2018).

3

Deciding an anti-SLAPP motion involves two steps. *See, e.g.*, *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002). First, the court must determine "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.* That is, the defendant must show that the conduct underlying the case was done "in furtherance of the [defendant's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16.

If the court finds the defendant has made such a showing, it proceeds to the second step: determining "whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.* On this second step, "[t]he court does not weigh evidence or resolve conflicting factual claims." *Baral*, 1 Cal. 5th at 384. Rather,

> [i]ts inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. Claims with the requisite minimal merit may proceed.

*Id.* at 384–85 (citations omitted). In other words, if the defendant does not prevail as a matter of law, the plaintiff's claim survives the defendant's anti-SLAPP motion to strike.

When a defendant brings an anti-SLAPP motion "challeng[ing] only the legal sufficiency of a claim," as NeoCortext does here, a court on the second step of the anti-SLAPP analysis "should apply the Federal Rule of Civil Procedure 12(b)(6) standard" for a motion to dismiss "and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

### B. Motion to Dismiss

Under Rule 12(b)(6), a party may move to dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A

4

complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed factual allegations, but it must provide more than just a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

Because the standard on step two of anti-SLAPP is identical to that on a Rule 12(b)(6) motion, the Court begins with the anti-SLAPP analysis.

#### A. Anti-SLAPP Step One

At this step, NeoCortext must make a threshold showing that its use of Young's image was made "in furtherance of [NeoCortext's] right of petition or free speech… in connection with a public issue." Cal. Civ. Proc. Code § 425.16. The Court therefore must determine 1) whether NeoCortext's conduct was in furtherance of its free speech rights and, if so, 2) whether that speech was connected to a public issue.

### 1. *Conduct in Furtherance of Free Speech Rights*

To clear the first hurdle, NeoCortext must show that the "act underlying the plaintiff's cause of action" was "*itself…* an act in furtherance of the right of petition or free speech." *Park v. Bd. of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057, 1063 (2017) (quoting *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002)). Here, "the focus is on determining what the defendant's activity is that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning" under the anti-SLAPP statute. *Id.* (quotations omitted).

As defined in the anti-SLAPP statute, an "act in furtherance of a person's right of petition or free speech" includes "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech." Cal. Civ. Proc. Code § 425.16(e). That is, "the statute's reach is not restricted to speech, but expressly applies to *conduct*." *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 166 (2003) (emphasis in original). Importantly, "that conduct is not limited to the exercise of [the defendant's] right of free speech, but to all conduct *in furtherance* of the exercise of the right of free speech." *Id.* (emphasis in original); *see also San Diegans for Open Gov't v. San Diego State Univ. Rsch. Found.*, 13 Cal. App. 5th 76, 101(2017), *as modified on denial of reh'g* (June 1, 2017) (stating that "this category is a 'catch-all' that extends the anti-SLAPP statutes beyond actual instances of free speech"); *Smith v. Payne,* No. C 12-01732 DMR, 2012 WL 6712041, at *3 (N.D. Cal. Dec. 26, 2012), *aff'd*, 594 F. App'x 397 (9th Cir. 2015) (quoting *Lieberman*).

The conduct that forms the basis of Young's Complaint is NeoCortext's inclusion of Young's name and image in the Reface app, and the invitation for users to combine their image with Young's to create a new, third image.² As the conduct is described in

---

² To the extent Young's allegations also rest on NeoCortext's *profiting* from its use of Young's image, that is not a consideration at this step. *See, e.g.*, *San Diegans for Open Gov't*, 13 Cal. App. 5th at 94 ("Courts must be careful to distinguish allegations of conduct on which liability is based from allegations of motives for such conduct.");

the Complaint, the users—not NeoCortext—exercise their free speech rights when they use Reface to create new images. The question, therefore, is whether NeoCortext's use of Young's image in its application is conduct taken in furtherance of users' exercise of free speech.

As the Ninth Circuit has recognized, California courts "have interpreted this piece of the defendant's threshold showing rather loosely." *Hilton*, 599 F.3d at 904. For example, in *Tamkin v. CBS Broadcasting, Inc.*, 193 Cal. App. 4th 133 (2011), a television writer drafted a script that used plaintiffs' names as placeholders for two unsympathetic characters, and the network that aired the show approved the dissemination of the draft script for casting purposes. Even though the characters' names changed by the time the episode was filmed, the plaintiffs sued both the writer and the network for defamation based on the original script. *Id.* at 145. The court found that the writer's creation of the draft and the network's approval of its dissemination constituted conduct in furtherance of the exercise of free speech because they "helped to advance or assist in the creation, casting, and broadcasting of an episode of a popular television show." *Id.* at 143. That is, even though the allegedly defamatory material did not ultimately end up in the "speech"—the episode of the television show—the material assisted in the creation of the speech, and therefore was "in furtherance" of it.

Other California courts have found the defendant's conduct to be in furtherance of protected speech where the conduct was similarly distant from the speech itself. *See, e.g.*, *Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871, 898 (2019) (network's termination of employee for plagiarism, while not itself speech, was "in furtherance of organization's speech rights"); *San Diegans for Open Gov't*, 13 Cal. App. 5th at 76 (contracts to provide "office space and related newsgathering facilities in exchange for investigative news stories furthers protected speech"); *Collier v. Harris*, 240 Cal. App.

---

*Hilton*, 599 F.3d at 908 ("That the card is a commercial product and Hilton's lawsuit a dispute over who can profit from her image does not defeat Hallmark's ability to make its threshold showing.").

4th 41, 54 (2015), *as modified* (Sept. 1, 2015) (registering plaintiff's name as a domain name in order to redirect users to a website endorsing political candidates was conduct furthering the exercise of free speech because "it provided [the defendant] additional avenues or forums in which to exercise those rights"); *Hupp v. Freedom Commc'ns, Inc.*, 221 Cal. App. 4th 398, 405 (2013) (website that refused to remove third party's comments regarding plaintiff furthered free speech by "[m]aintaining a forum for discussion of issues of public interest").

    One might argue that the user-generated images that constitute the "speech" in this case do not implicate the same high-level free speech concerns as the cases above. But at this step, the "inquiry does not turn on a normative evaluation of the substance of the speech," and the Court is "not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 151 (2019). Additionally, "the fact that expression takes a form of nonverbal, visual representation [does not] remove it from the ambit of First Amendment protection." *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 398 (2001). Indeed, "because celebrities take on personal meanings to many individuals… the creative appropriation of celebrity images can be an important avenue of individual expression." *Id.* at 397. Wrongful or not, NeoCortext's use of Young's image gives users a tool for such expression. It is therefore "conduct in furtherance of" users' free speech rights.[3]

---

[3] NeoCortext also argues that Young takes issue with is its software, and that software is protected speech under the First Amendment. (Reply, Docket No. 36 at 11). This argument fails. Courts in this circuit have indeed held that the source code underlying software is speech protected by the First Amendment. *See, e.g.*, *Bernstein v. U.S. Dep't of State*, 922 F. Supp. 1426, 1436 (N.D. Cal. 1996) ("[T]his court finds that source code is speech."); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1099 (N.D. Cal. 2004) ("Courts have held that computer code is speech, and therefore merits First Amendment protection."). But NeoCortext's argument is inapt because neither the software nor its source code is at issue. The Reface software itself merely takes input in the form of two photographs and combines them to produce a single photograph. Young does not take issue with that

2.  *Connection with a Public Issue*

The next inquiry is whether NeoCortext has shown that the speech its conduct furthers is connected with a "public issue." Cal. Civ. Proc. Code § 425.16. While there is no definitive test for what constitutes a "public issue," under one widely used test, a public issue may fall under three categories: "(1) statements concerning a person or entity in the public eye; (2) conduct that could directly affect a large number of people beyond the direct participants; (3) or a topic of widespread, public interest." *Hilton*, 599 F.3d at 906 (9th Cir. 2010) (cleaned up) (citing *Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO*, 105 Cal. App. 4th 913 (2003)). Young, as a reality show cast member, is in the public eye. NeoCortext's conduct—using celebrities' likenesses in the Reface application—could directly affect many people whose images might also be used. Finally, the use of technology to alter images and videos of individuals in a way that makes them look realistic is a topic of widespread public interest.[4] Young does not dispute any of this.

Because NeoCortext has shown that its conduct is in furtherance of the right of free speech made in connection with a public issue, it has satisfied its burden on the first step of the anti-SLAPP analysis.

**B.    Anti-SLAPP Step Two and 12(b)(6)**

As discussed above, when a defendant carries its burden on the first step of the anti-SLAPP analysis, the burden then shifts to the plaintiff to show "a probability of prevailing on the claim." Cal. Civ. Proc. Code § 425.16.[5] NeoCortext argues that

---

aspect of Reface, and it is not the "activity" underlying Young's cause of action.
[4] *See, e.g.*, Todd Spangler, *'This is an Existential Threat': Will AI Really Eliminate Actors and Ruin Hollywood? Insiders Sound Off*, VARIETY, https://variety.com/2023/digital/features/hollywood-ai-crisis-atificial-intelligence-eliminate-acting-jobs-1235697167/ (last visited August 24, 2023).
[5] Again, because NeoCortext challenges the legal sufficiency of Young's claim, the Court must apply the same standard as it would on a motion to dismiss brought under Rule 12(b)(6). *Planned Parenthood*, 890 F.3d at 834. As a result, the Court considers the second step of the anti-SLAPP analysis and NeoCortext's motion to dismiss

Young has not done so for three reasons. First, NeoCortext argues that Young's right of publicity claim is preempted by the Copyright Act. (Mot. to Dismiss, Docket No. 33 at 4–10). Second, NeoCortext argues that the claim is barred by the First Amendment. (*Id.* at 10–11). Finally, NeoCortext asserts that Young has not made a *prima facie* showing that NeoCortext violated his right of publicity. (*Id.* at 11–13). The Court addresses each argument in turn.

### 1. *Copyright Preemption*

The Copyright Act "preempt[s] and abolish[es] any rights under the common law or statutes of a State that are equivalent to copyright" and that fall "within the scope of the Federal copyright law." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017). The Ninth Circuit has developed a two-part test to determine whether the Copyright Act preempts a claim. *Id.* A court must first "decide whether the subject matter of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Id.* (citation and quotations omitted). If it does, the court goes on to decide "whether the rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id.* (citation omitted).

### a) *Subject-Matter of Copyright Law*

While the Copyright Act protects ownership of photographs, it does not protect the exploitation of one's likeness—even if it is embodied in a photograph. *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. 2001). In *Downing*, the Ninth Circuit reversed a district court's summary judgment to the defendant on plaintiffs' right of publicity claim. *Downing*, 265 F.3d at 1000. The defendant, a clothing retailer, had used decades old photographs of the plaintiffs in a catalogue "as window-dressing to advance the catalog's surf-theme." *Id.* at 1002. On appeal, the Ninth Circuit drew the distinction between the subject-matter of copyright and that of the plaintiffs' right of

---

concurrently.

publicity claim:

> The photograph itself, as a pictorial work of authorship, is subject matter protected by the Copyright Act. See 17 U.S.C. § 101 (providing that 'pictorial, graphic, and sculptural works include ... photographs.') However, it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for Appellants' claims, but rather, it is the use of the Appellants' likenesses and their names pictured in the published photograph.

*Id.* at 1003.

Later, in *Maloney*, the Ninth Circuit summed up the general rule from *Downing* and the cases that followed. It said that precedent "implies that misuse of an individual's likeness is the basis of a publicity-right claim when the name or image is exploited in advertising or on merchandise." *Maloney*, 853 F.3d at 1014 (quotations omitted). On the other hand, the court said, "one's likeness does not form the basis of a publicity-right claim when the tort action challenges control of the artistic work itself or involves the mere republication of the photograph." *Id.* (quotations and citation omitted).

Young's right of publicity claim does not fall within the subject matter of copyright. Like the plaintiffs in *Downing*, Young does not challenge the control of the images used in the Reface application, nor is his complaint about the "mere republication" of those images. Rather, the basis of Young's claim is that NeoCortext uses his likeness on advertising and merchandise when it allows users to create a product containing his image. (*See, e.g.*, Compl. ¶ 43 ("Mr. Young and class members never provided Defendant with their consent to use any attribute of their identities in advertisements for Defendant's paid subscriptions or in Defendant's paid product.")).[6]

---

[6] At oral argument Defendant argued that the Complaint does not specifically allege that the Reface application "indexes" Plaintiff's images for users as opposed to merely searching the web based on user input. While this factual distinction may make a difference in the ultimate liability of Defendant, at this stage, the Court need not make this factual finding. It is enough that the Complaint alleges that Defendant's name and likeness is used in some way in the Reface app to entice users to pay the

The use of Young's name and likeness in the Reface app distinguishes it from *Maloney*, upon which Defendant relied at oral argument. The plaintiffs in *Maloney* sought to hold the defendants liable under a right of publicity cause of action for the sale of photographs that were protected by copyright. *Maloney*, 853 F.3d at 1137. "Since Plaintiffs do not identify any use of their likenesses not wholly contained within the photographs, Plaintiffs' claims seek to prevent Defendant from distributing the copyrighted work itself." *Id.* Here, the Complaint sets forth a use of Young's name and likeness outside of the photograph itself; according to the Complaint, *Reface* uses Young's name and likeness to attract users to the free version of the *Reface* application with the intent of having some users purchase a subscription to *Reface*. (Compl. ¶ 19).

Similarly unavailing is NeoCortext's reliance at oral argument on *Laws v. Sony Music Entertainment, Inc.*, 448 F.3d 1134 (9th Cir. 2006). *Laws* involved a copyrighted voice recording, a portion of which was reproduced (pursuant to license) in a new song. *Id.* at 1144. As in *Maloney*, the plaintiff in *Laws* sought to stop the reproduction of the copyrighted work within the new song, but the Ninth Circuit, unsurprisingly, found that right belonged to the copyright holder (from which the defendant had received a license). *Id.* at 1144–45. Here, again, the Complaint alleges use of the Young's name and likeness to sell subscriptions to its app, making this case more like *Downing* than *Maloney* and *Laws*.

Although not binding on this Court, the Court does find the analysis in *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 2d 582, 594 (N.D. Ill. 2021), persuasive. While not identical to this case, that court distinguished *Maloney* when denying a motion to dismiss where the defendant used the plaintiff's copyrighted yearbook photograph to advertise the defendant's website's services. *Id.* at 587–88. Thus, *Bonilla* too supports this Court's conclusion.

Because Young's allegations center on how his name and likeness are used in

---

subscription fee.

12

NeoCortext's products and not on the ownership rights to the images themselves, Young's claim in the Complaint does not fall under the subject-matter of copyright, and his claim is therefore not preempted under the Copyright Act.

          b)      *Whether the State Law Rights Asserted are Equivalent to the Exclusive Rights Contained in § 106*

For the same reasons as set forth in the above analysis as to preemption, the Court finds that, on the face of the Complaint, the rights Young asserts here are not equivalent to the rights conferred by the Copyright Act to the owners of the photographs at issue. *Cf. Downing*, 2665 F.3d at 1005 ("Because the subject matter of the Appellants' statutory and common law right of publicity claims is their names and likenesses, which are not copyrightable, the claims are not equivalent to the exclusive rights contained in § 106."). Section 106 of the Copyright Act does not confer upon the owners of the photographs the right to use Young's name and various likenesses to advertise the free version of its software—a product intended to lead to purchases of subscriptions to its full product. Young is not seeking to "merely" restrict the reproduction or distribution of the original photographs/works, as the plaintiffs in *Maloney* and *Laws*. Therefore, this second factor also fails.

          2.      *First Amendment Transformative Use*

Under California law, "when an artist is faced with a right of publicity challenge to his or her work, he or she may raise as [an] affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame." *Comedy III Prods.*, 25 Cal. 4th at 407. This inquiry hinges on "whether the celebrity likeness is one of the 'raw materials' from which an original work is synthesized, or whether the depiction or imitation of the celebrity is the very sum and substance of the work in question." *Hilton*, 599 F.3d at 909 (quoting *Comedy III Prods.*, 25 Cal. 4th at 406).

13

At this stage, to defeat Young's claim, NeoCortext must show that its use is transformative as a matter of law. *See Hilton*, 599 F.3d at 911. NeoCortext argues that it has done so because "[t]he very purpose of Reface is to transform a photo or video in which Plaintiff's (or others) [sic] image appears into a new work in which Plaintiff's face does *not* appear." (Mot. to Dismiss at 11). But Young's face is the only thing that changes in the end product; at least in some instances, the end photograph still depicts the rest of Young's body in the setting in which he became a celebrity.

The Ninth Circuit has found that depictions that are arguably more transformative than those created with Reface do not entitle a defendant to the affirmative defense as a matter of law. For example, in *Hilton*, the Ninth Circuit considered a greeting card depicting Paris Hilton as a waitress and using her signature catch phrase. 599 F.3d at 899. The picture was taken from an episode of a reality television show in which Hilton worked as a waitress. *Id.* at 911. The Ninth Circuit pointed out that "there are some differences between the waitressing Hilton does in the… episode and the portrayal in Hallmark's card," including the style of the restaurant, Hilton's uniform, and the food. *Id.* Additionally, "the body underneath Hilton's over-sized head [was] a cartoon drawing of a generic female body rather than a picture of Hilton's real body." *Id.* "Despite these differences," the court found, "the basic setting is the same: we see Paris Hilton, born to privilege, working as a waitress." *Id.* The Ninth Circuit thus found that Hallmark was not entitled to the transformative use defense as a matter of law.

NeoCortext's reliance on *Winter v. D.C. Comics Inc.,* 30 Cal. 4th 881 (2003), and *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47 (2006), is unavailing. Both of those cases involved artistic renditions of the plaintiffs—in *Winter* for comic books and in *Kirby* for video games. *Winter*, 30 Cal. 4th at 885; *Kirby*, 144 Cal. App. 4th at 50; *but see In re NCAA Student-Athlete Name & Likeness Licensing Lit.*, 724 F.3d 1268, 1284 (9th Cir. 2013) (affirming denial of defendant's motion to strike right of publicity cause of action where plaintiffs' likenesses were used in video game). Here, the replacement

14

of Young's face on an actual photograph of Young is not "transformative" in the manner asserted in *Winter* and *Kirby*. Indeed, the whole point of NeoCortext's product is to ensure that the image of Young is not so transformed that it reduces the "shock value" of the user's face on Young's body in a recognizable situation. Also of note, both *Winter* and *Kirby* were decided at the summary judgment stage when an evidentiary record had been developed, *not* at the motion to dismiss stage. *Winter*, 30 Cal. 4th at 886; *Kirby*, 144 Cal. App. 4th at 53.

The replacement of Young's face in the Reface application is most analogous to the replacement of Hilton's body in the greeting card at issue in *Hilton* or the use of computer-generated images of athletes in a sports video game as in *In re NCAA Student-Athlete*. While it may ultimately be deemed transformative as a matter of fact, that does not entitle NeoCortext to the defense as a matter of law. NeoCortext has therefore not shown that the First Amendment bars Young's right of publicity claim.

### 3.  *Prima Facie Showing*

A right of publicity claim under California Civil Code section 3344, like the one Young brings here, requires a plaintiff to establish (1) defendant's knowing use of the plaintiff's identity; (2) "the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise"; (3) "a direct connection between the alleged use and the commercial purpose"; (4) a lack of consent; and (5) a resulting injury. *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1139 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017).

NeoCortext's main argument here is that Young has not established that NeoCortext "knowingly" used Young's identity in the Reface application. (*See* Reply at 9). For his part, Young argues that his allegations lead to the reasonable inference that NeoCortext acted knowingly by "programm[ing] an app that scraped video clips of him, indexed him in its database, permitted him to be searchable through the [application's] search bar, and allowed users to become him." (Opp'n to Mots. to

Dismiss & Strike at 35 (citing Compl. ¶ 18)).

NeoCortext does not provide support for its apparent assertion that "knowingly" means "with affirmative knowledge of" the presence of Young's image in the Reface application. Construing the Complaint in the light most favorable to Young, the Court finds that Young has adequately pled that NeoCortext "knowingly" used his identity when it compiled his images with his name in the Reface application and made the images available for users to manipulate.

## IV. CONCLUSION

For the reasons stated above, NeoCortext's Motion to Dismiss and Motion to Strike are **DENIED**.

**IT IS SO ORDERED.**

Dated: September 5, 2023

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE