```
 1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
 2                    WESTERN DIVISION - LOS ANGELES

 3

 4   KYLAND YOUNG,                   ) Case No. CV 23-2496-WLH (PVCx)
                                     )
 5        Plaintiff,                 ) Los Angeles, California
                                     ) Friday, August 25, 2023
 6            v.                     ) 10:32 A.M. to 10:58 A.M.
                                     )
 7   NEOCORTEXT, INC.,               )
                                     )
 8        Defendant.                 )
                                     )
 9

10

11

12

13                     TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE WESLEY L. HSU
14                   UNITED STATES DISTRICT JUDGE

15

16   Appearances:             See Page 2

17   Deputy Clerk:            Holidae Crawford

18   Court Reporter:          Recorded; CourtSmart

19   Transcription Service:   JAMS Certified Transcription
                              16000 Ventura Boulevard #1010
20                            Encino, California  91436
                              (661) 609-4528
21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1  APPEARANCES:
 2
 3  For the Plaintiff:      Bursor and Fisher, P.A.
                            By:  STEFAN BOGDANOVICH
 4                               LAWRENCE TIMOTHY FISHER
                            1990 North California Boulevard
 5                          Suite 940
                            Walnut Creek, California  94596
 6                          (925) 300-4455
                            sbogdanovich@bursor.com
 7                          ltfisher@bursor.com
 8
     For the Defendant:     Fenwick and West LLP
 9                          By:  TYLER G. NEWBY
                            555 California Street, 12th Floor
10                          San Francisco, California  94104
                            (415) 875-2300
11                          tnewby@fenwick.com
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1      LOS ANGELES, CALIFORNIA, FRIDAY, AUGUST 25, 2023, 10:32 A.M.
 2           (Call to Order of the Court.)
 3           THE CLERK:  Calling Item No. 1, L.A. 23-CV-2496,
 4   Kyland Young v. NeoCortext, Inc.
 5           Counsel, state your appearances starting with
 6   plaintiff.
 7           STEFAN BOGDANOVICH:  Good morning, Your Honor.
 8   Stefan Bogdanovich appearing on behalf of Plaintiff
 9   Kyland Young, alongside my colleague Tim Fisher.
10           THE COURT:  Good morning.
11           TYLER G. NEWBY:  Good morning, Your Honor.
12   Tyler Newby of Fenwick and West on behalf of the Defendant
13   NeoCortext.
14           THE COURT:  Good morning to both of you.
15           We're here on the defendant's motion to strike and
16   the motion to dismiss.  We issued the tentative yesterday
17   evening.  Hopefully both sides have had sufficient time to
18   review it.
19           So, Mr. Newby, would you like to be heard?
20           MR. NEWBY:  Yes, Your Honor.  And I will speak from
21   the lectern just because I'm a little taller --
22           THE COURT:  Sure.
23           MR. NEWBY:  -- and it's easier to speak into the
24   mic without hunching.
25           THE COURT:  Sure.
```

1             MR. NEWBY:  Thanks for the tentative, Your Honor.
2    It was, I think, very helpful in us -- helping us focus the
3    issues today.
4             I want to start, first, on copyright preemption,
5    and I think what -- the question before the Court is really
6    is this case more like *Maloney v. T3*, or is it more like
7    *Downing v. Abercrombie*?  And Your Honor came to the
8    conclusion in the tentative that it's more like *Downing*.  We
9    would submit that a close reading of both the Complaint and
10   those respective opinions is that it's more like *Maloney* and
11   that copyright preemption should apply here.  Here's the
12   reason why:
13            What the plaintiffs have essentially argued is that
14   -- even though they've couched it in terms of advertising or
15   teasers, what they've alleged NeoCortext is selling is clips,
16   gifs taken from a television show or image stills from that
17   television show, and that's really what they're alleging we
18   are selling.  Yes, the plaintiff's image is part of those
19   clips, but that's going to be true of every case where
20   there's a photograph of a famous person, or a segment of a
21   television show or a movie, or a piece of a person singing in
22   a song recording.  And what they're alleging is not that we
23   are putting Mr. Young's face in advertisements to sell other
24   things -- to sell t-shirts like in *Abercrombie* or to sell --
25            THE COURT:  No.  I -- that I understand.  In fact,

1  you're not using his face at all.  You're using the rest of
2  him -- this is the argument, so it goes -- to provide a loss
3  leader in order to get people to buy the pro version of the
4  product.  That's my understanding of (inaudible).
5         MR. NEWBY:  I don't know that I would call it a
6  "loss leader" in that -- because there's no money made at
7  all.  It's a  free to use -- a freemium app.  So you can use
8  it for free without a watermark attached to it.  You can use
9  it with paying --
10        THE COURT:  No.  Free with a watermark.
11        MR. NEWBY:  Yes.  Thank you, Your Honor.  You're
12 correcting me correct.
13        So I -- you know, what is really being sold here,
14 to the extent anything is being sold, is a subscription to
15 access these images and manipulate them in a way that doesn't
16 have the watermark.  There are some other things that are not
17 in the Complaint that I won't get into.  But the essence of
18 what is being sold is that copyrighted content clip that
19 contains his face which can then be manipulated.
20        That's the same thing in *Maloney*, right.  It was
21 photos on a website of famous athletes -- or maybe even not-
22 so-famous athletes but known athletes in famous moments.  And
23 *Maloney* also -- and we cited *Laws* -- *Laws v. Sony* -- both of
24 these cases are after *Downing*, right.  *Downing* is, I believe,
25 2001.  These cases came after *Downing*, much more thorough

1  analysis of copyright preemption than *Downing* had, and in
2  *Downing* it really was being used in a catalog to sell a lot
3  of other stuff.  You weren't selling the photo, right.  You
4  were selling other stuff.  And in *Maloney* what is being sold
5  is the clip that has -- or the photos.  That's what's being
6  sold here.  It is the clip or photos that include Mr. Young's
7  face similar --
8          THE COURT:  Maybe -- I -- because maybe that is the
9  first thing that the user does, but then with their yearlong
10 or monthlong subscription, they are accessing thousands of
11 these -- not of Mr. Young but of other, you know, celebrities
12 -- or maybe non-celebrities, I don't know -- haven't
13 investigated that part but -- so it's not exactly right to
14 say that the only thing that's being sold here is the image
15 of Mr. Young.  The -- what's being sold here is -- as you put
16 it, is access -- or is a subscription, I think, to the
17 algorithm so that they can do this thousands of times if they
18 want to.  Isn't that different?
19         MR. NEWBY:  I think it is different from *Downing*.
20 It's -- because in *Downing* -- look, if *Downing* had been the
21 case where the only thing that was being sold was the catalog
22 and you had to pay for the catalog with his image, I think it
23 would be a different case, right, because then it would be
24 like selling a book or a magazine.  And in *Maloney*, right,
25 you could say the same thing, that the images that were

1  available in thumbnails on the website were being used to
2  advertise the sale of those photos for download and unlimited
3  use.
4           THE COURT:  Right.
5           MR. NEWBY:  I don't think that's distinguishable
6  from our case here.  And I will concede, this is -- it's an
7  interesting case, right.  These are kind of close issues.
8           THE COURT:  I think so.
9           MR. NEWBY:  And I -- you know, the preemption
10 analysis throughout the Ninth Circuit is -- sometimes it's a
11 little hard to reconcile, but I think the *Maloney* and *Laws v.*
12 *Sony* cases, which are later than *Downing*, the much more
13 thorough analysis -- I would submit that a closer reading of
14 those cases, I mean, shows that this is more like those cases
15 than in *Downing*.
16          If you'd like, Your Honor, I'm also prepared to
17 address the other two points that Your Honor --
18          THE COURT:  Sure.
19          MR. NEWBY:  So let me go, first, to an issue that
20 kind of affects copyright preemption, as well as the knowing
21 element, and the plaintiffs in their opposition brief -- and
22 Your Honor cited this in your tentative -- said that Well, we
23 index his name.  We index it and put it in a database that's
24 searchable.  That's not in the Complaint, and I'd urge
25 Your Honor to read paragraph 18.  The word "index" does not

1  appear.

2  What they say is that there is a search tool --
3  there is a search tool -- and you can do searches and -- you
4  can do searches and that will result in images in which
5  Mr. Young appeared. They don't say that you can search for
6  his name. And I'm not -- you know, and I don't think you'll
7  find that anywhere in the Complaint. It's entirely
8  plausible, if not more plausible, given that Mr. Young is not
9  exactly, you know, Michael Jordan or somebody who's super
10 famous, that you'd be searching for "Big Brother," the
11 copyrighted content, and that would result in clips taken
12 from "Big Brother."

13         THE COURT: Hmm.

14         MR. NEWBY: I think that is an equally plausible,
15 if not more plausible, construction of what's alleged in the
16 Complaint. So I think, you know, that affects both the Is
17 this advertising using his name? as well as the knowing
18 element.

19         I think the other thing that distinguishes this
20 case in terms of the knowing element versus a case like
21 *Downing* or versus a case like *Laws* is -- *Laws* is -- or,
22 *Hilton*, I should say -- *Hilton* is those are cases where the
23 plaintiff -- I mean -- sorry -- the defendant is using a
24 single famous person's face, really, to -- or likeness to
25 advertise their product, whether it's Bette Midler's voice,

1  Paris Hilton's face in a famous scene, these, you know,
2  somewhat well-known surfers. It's one person, right, and so
3  that creates this appearance of sponsorship, and that's
4  brought out in *Maloney*. That's one of the concerns that
5  *Maloney* identified as being one of the concerns in right of
6  publicity cases. It also cites *Tony* -- the *Tony* case.
7         And that's really not present here, right. You've
8  got an app that is pulling through an API from all of these
9  gifs -- from Tenor, which is an API service -- all over the
10 Internet, right. And so there's not this appearance of
11 sponsorship by a single person. It is a -- it's an
12 entertainment-based app for people to superimpose their faces
13 on other people's faces in meme-worthy scenes, and I think
14 that is quite different from a case where Hallmark goes out,
15 it clips Paris Hilton's face, puts it on a greeting card to
16 sell that greeting card.
17        And so I think that they need to allege more,
18 really, to get the knowing element. It's not really an issue
19 that's been explored a lot in the case law -- as
20 Your Honor's, you know, noted, we haven't cited anything --
21 but it's the plain language of the statute, and knowing has
22 to have some meaning -- it's not a strict liability statute,
23 and I think the reason why it hasn't been really drawn out in
24 the case law is because all of these other cases it's one
25 famous person or one well-known person, not an app that draws

1  on thousands of gifs -- gifs (pronouncing) -- however you
2  want to say it -- or jpegs from the Internet.
3          THE COURT:  So to, perhaps, twist your argument
4  into a way that's the worst-case scenario for you, "Because
5  we infringed the right of thousands of people, we're not
6  knowingly infringing the right of any of the individuals that
7  we are infringing"?
8          MR. NEWBY:  We don't infringe anybody's rights.
9          THE COURT:  Okay.
10         MR. NEWBY:  But -- no.  I think that's -- there's
11 some element to that, yes.  It is an automated service just
12 like Google Image [sic] search is an automated service,
13 right.  There's -- there is that lack of intent or -- not
14 even intent -- knowledge when you have an automated service
15 that's just drawing from APIs pulling stuff from the
16 Internet.  And it's not -- they have not alleged, you know,
17 deliberate scraping -- that was a term used in their
18 opposition, doesn't appear in the Complaint.  They didn't
19 index individuals' names.  That's not a term that appears in
20 the Complaint.  So I think it is materially different from
21 all of these other publicity cases in that respect.
22         THE COURT:  Okay.  So just, as far as I know
23 sitting here today based on the allegations in the Complaint,
24 assuming that they are true, the best -- what you're saying
25 is the best that the plaintiff can say is that basically the

1  software goes through a Google Image search and finds -- and
2  outputs images based on the user's search term that they then
3  want -- that the user then can choose to use the algorithm to
4  manipulate?
5           MR. NEWBY:  Correct, Your Honor.  And --
6           THE COURT:  Is that correct?
7           MR. NEWBY:  Yes.  And they cite several sources.
8  Google Image, Google Video, and Tenor.com, which is owned by
9  Google.  It's an API service.
10          THE COURT:  Okay.  Okay.
11          MR. NEWBY:  All right.  Last point is on the
12 transformative use First Amendment argument.  Again, I -- so
13 looking at *Hilton* as probably the -- you know, the most well-
14 known Ninth Circuit case on this issue, I would submit *Hilton*
15 is materially different and this case is more like *Winters*
16 [sic] and *Kirby*, which are the two California Court of
17 Appeals cases on transformative use.  In *Hilton*, right, what
18 was maintained was her very famous face in a well-known scene
19 from a show and a catchphrase, and so that face -- the well-
20 known face remained -- sure they attached a cartoonish body
21 -- like, generic female body to it, but what really sold was
22 that face and here -- so there was really no transformation
23 of her -- what made her famous: her face, her catchphrase,
24 that scene.
25          What is being transformed here -- and I'd submit

1  this is more like *Kirby* and *Winter* -- is the face.  It is --
2  you know, it's not like Mr. Young is, you know, in some
3  famous pose that he's known for, like The Rock or something,
4  where you could superimpose somebody else's face on The Rock
5  and -- from a wrestling scene and people would know that.
6  What is being replaced is the face.  That is the key
7  transformation.  That's the whole point of this app is to
8  have this kind of entertaining change from a scene in a show
9  or a meme-worthy, you know, piece of content.  So I think
10 this is more like *Kirby* and *Winters*, where you have transform
11 -- transformations of faces into, like, a worm and an anime
12 character.  Even though it's very clear who those people
13 were, you removed that critical element of the person's face
14 and transformed it into something else, and I would submit
15 this is -- that's exactly what this app does.
16           THE COURT:  I mean, although presumably the users
17 know what's happening in the scene; otherwise, they wouldn't
18 be using the app to impose their face on, right?  I mean --
19           MR. NEWBY:  Well, sure, but that's -- you know,
20 that's always going to be the case in a transformative use,
21 right.  You're always going to know the original source,
22 whether it's a couple of these singers whose -- you actually
23 don't really know who they are -- *Winters* and *Kirby* -- you
24 know -- like, you can identify the reference, but it is
25 transforming them into something else, you know, that's --

1 transforming that key image, likeness into something else,
2 and that's what this app does.  Again, I recognize this is a
3 close call, it's an interesting case, but I think we land on
4 the winning side on that one, again.
5          THE COURT:  Okay.
6          MR. NEWBY:  Thank you, Your Honor.
7          THE COURT:  All right.  Thank you very much.
8          Mr. Bogdanovich?
9          MR. BOGDANOVICH:  Yes.  Good morning, Your Honor.
10 I'd like to use the lectern as well but --
11          THE COURT:  Yes.
12          MR. BOGDANOVICH:  -- I thought the Court issued a
13 thoughtful order, and I just briefly want to address some of
14 the points that our friends made.
15          THE COURT:  Okay.
16          MR. BOGDANOVICH:  On copyright preemption, opposing
17 counsel mentions is this case more like *Downing,* or is this
18 case more like *Maloney*?  I'd submit it's probably most like
19 the case they did not try to distinguish in the reply brief,
20 which is the Ancestry.com line of cases.  In those cases,
21 much like the Court observed here, there was an online
22 product that had a loss leader.  In that particular case it
23 was old yearbooks.  And the defendant in that case made a
24 copyright preemption defense, also cited *Maloney*, and what
25 the court in that case found is that at the end of the free

1  version of the Ancestry product, they told users "There's
2  more to see," and if you want to see whatever there is more,
3  you have to go behind the pay wall.
4          That's exactly what we have here.  Whenever you use
5  the free version of the application, you get what we've
6  called "teaser face swabs" that have the watermark over it.
7  Like was here, there's literally more to see once you pay and
8  you remove the watermark.  It -- the watermark takes away
9  some of the aesthetic value, some of the shock value.
10 Defendant NeoCortex itself admits on its listing on the
11 Apple App Store that the purpose of the app is to freak out
12 friends, and I believe that's in paragraph 20 of our
13 Complaint.  So I'd actually submit this case is probably most
14 similar to the Ancestry line of cases.
15         I think it's also important to kind of look into
16 the facts of *Maloney*.  There you never had this kind of --
17 these kind of teasers.  You didn't have any kind of loss
18 leader.  All it was, was a website that allowed for people to
19 get access for personal use of downloading photos from the
20 NCAA photo library.  So you pay for a subscription upfront,
21 and then you get access to this library to download photos
22 for personal use.  Again, that's not what we have here, and I
23 think the Court correctly identified there's a loss leader
24 aspect here.
25         In terms of knowing use, one of the things opposing

1  counsel mentioned is that there's no sponsorship here and
2  that this area of case law has not been explored.  I'd
3  actually submit there's probably more case law than opposing
4  counsel lets on.  In particular, there's been many right of
5  publicity class actions in this circuit and others where,
6  although the issue has not been addressed implicitly, it
7  appears that there -- doesn't -- the statute doesn't require
8  some kind of a specific knowledge of the particular
9  individual that you're using.
10          If I could point the case -- the Court to any one
11 particular case that I think is instructive, it would
12 probably be *In re NCAA Student-Athlete Name and Likeness*
13 *Litigation*.  That was a right-of-publicity class action
14 brought on behalf of all NCAA student athletes for the use of
15 their likeness in videogames, and in that particular case,
16 they actually discuss the whole issue of sponsorship.  The
17 defendants in that particular case tried to import the *Rogers*
18 test from the Lanham Act in order to say, "Well
19 transformative use under the California right-of-publicity
20 statute should be the same as the *Rogers* test," and the Ninth
21 Circuit explicitly rejected that, and their reasoning behind
22 this was that the Lanham Act is meant to protect consumers;
23 whereas, the right of publicity is meant to protect the
24 individuals that are being depicted.
25          And so for that reason sponsorship is really not

1  the primary issue.  The primary issue is the use of the
2  individual's likeness.  The right-of-publicity statute is not
3  concerned about false advertising, false affiliation, false
4  designation of origin -- any kind of false sponsorship.  It's
5  focused on this personal right that, if a person is going to
6  use your likeness, you ought to be paid for it.
7           In terms of -- turning on to, I guess, the
8  transformative use element, I'd submit Your Honor issued a
9  very thoughtful analysis of how this case is similar to
10 *Hilton v. Hallmark Cards*.  However, I'll actually submit that
11 what's interesting is in that particular case the
12 transformation of Ms. Hilton's body that was done, it was
13 done by the defendant.  That was Hallmark Cards.  That's
14 different than what's happening here.  What's happening here
15 is the transformations are being done by the users.  And in
16 *Hilton* the court never considered what the users of
17 Hallmark Cards wrote in the card in terms of whether or not
18 that was transformative to the overall end product.
19          So there's a bit of a disagreement in the briefs in
20 terms of what to make of the videogame cases.  We argue the
21 focus is on whether the designers designed the game in a
22 creative way.  They state that the focus is on the end
23 result.  I'd submit that it can't be the end result because
24 the end result was not what was relevant in *Hilton v.*
25 *Hallmark Cards*.  The end result of a Hallmark card ultimately

1   is you write a message to one of your friends.  Maybe you do
2   it to freak them out, maybe you do it to -- you know, for
3   whatever reason -- to show appreciation, and that changes the
4   overall message that is being conveyed by Hallmark.
5              And I think that's the right approach because the
6   transformative use defense is a First Amendment defense, and
7   so we really need to be asking whose speech is it?  I'd
8   submit that the swapping of the faces is the speech of the
9   users.  After all --
10             THE COURT:  I agree with that.  I agree with that.
11             MR. BOGDANOVICH:  Uh-huh.
12             And if the Court has any questions, I'd be happy to
13  --
14             THE COURT:  But if that's the case, does that hurt
15  you on the other aspect?  Is it just mere republication?  Is
16  it the user that's actually doing the tort, I guess?
17             MR. BOGDANOVICH:  No, Your Honor, because the --
18  no, Your Honor, and I think it's probably because the tort's
19  not being committed by the friend because they're using it
20  for personal use.  Again, one of the key elements of a right-
21  of-publicity violation is the commercial-use element, and as
22  I think this Court recognized, what we're really focused on
23  here is not what the Reface users are doing.  It's,
24  particularly, what is the defendant doing to commercially use
25  Mr. Young and other class members' image or likeness?  And

1   it's presenting him as a loss leader to incentivize new
2   downloads of the app and paid subscriptions of the app.
3              THE COURT:  Okay.  All right.  Thank you.
4              MR. BOGDANOVICH:  Thank you.
5              THE COURT:  Mr. Newby, final thoughts?
6              MR. NEWBY:  Yes, Your Honor.  I'll be brief, and
7   I'll just address the Classmates cases -- or *Ancestry* cases.
8   I'm sorry.  There -- I think there are a few, actually, that
9   were cited.
10             The difference between -- and first of all, those
11  are all out of -- not only out of circuit but -- or out of
12  district -- out of circuit district court cases, none of
13  which is precedential.  And I think the difference here is
14  those were cases where it was literally -- and I think
15  "teaser" is the appropriate use there, like, very small
16  subset of what was ultimately accessible, right, used in
17  advertisements, and this is a case where you get access to
18  the entirety of the image database from the get-go.  It's
19  just removing that --
20             THE COURT:  Watermark.
21             MR. NEWBY:  -- watermark that gets -- that you get
22  extra if you pay.
23             We're not arguing, you know -- nor can we because
24  the Ninth Circuit has said we can't -- arguing that the
25  Rogers transformative use test applies in the copyright

1  context, but the *NCAA* cases -- or case, I should say, is
2  different.  That's one where they literally took an image and
3  features -- facial feature size and transformed that into a
4  videogame character and -- which is quite different from this
5  case, and you can't -- I mean, yes, it's not -- right of
6  publicity is not purely a -- it's not a consumer-protection-
7  or Lanham Act-type right, but the Ninth Circuit has said both
8  in *Laws* and in *Maloney* that you still have to look at whether
9  there's the appearance of sponsorship and endorsement by the
10 user -- or by the celebrity plaintiff.  So it's not in a
11 relevant consideration, and it's a factor that just does not
12 exist here.
13           Thank you, Your Honor.
14           THE COURT:  Okay.  Thank you both very much.  This
15 was helpful.  The matter is taken under submission, and we'll
16 issue an order as soon as we can.
17           MR. BOGDANOVICH:  Thank you.
18           THE CLERK:  All rise.  Court is adjourned.
19       (Proceedings adjourned at 10:58 a.m.)
20 ///
21 ///
22
23
24
25

1
2
3
4                          CERTIFICATE
5        I certify that the foregoing is a correct transcript
6   from the electronic sound recording of the proceedings in the
7   above-entitled matter.
8   /s/ Julie Messa                  October 8, 2023
    Julie Messa, CET**D-403          Date
9   Transcriber
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Case 2:23-cv-02496-WLH-PVC   Document 57   Filed 10/10/23   Page 20 of 20   Page ID #:366